Mary E. Mathes *et al.* v. The Shaw Oil Company *et al.*

No. 16,022.

### SYLLABUS BY THE COURT.

Rents and Royalties—*Gas and Oil Produced from Same Well— Lease Construed.* A gas-and-oil lease, in addition to the usual provisions, contained a clause to the effect that if gas were found in any well sufficient to justify saving and casing the lessors might have enough for domestic purposes, and the lessee the remainder. Immediately following this was a clause which reads: "If, however, second party *shall use,* market or sell gas from any well producing gas, it shall pay . . . therefor fifty dollars per year for and during the time such gas shall be sold, marketed or used, except for drilling or domestic use of parties leasing to second party." *Held,* that the lessee is liable for the stipulated rental if gas is used by it for purposes other than drilling.

Error from Neosho district court; James W. Finley, judge. Opinion filed May 8, 1909. Reversed.

### STATEMENT.

The plaintiffs in error own land upon which there is an oil-and-gas lease. The defendants in error own the lease and operate thereunder. The lessors commenced this action to recover rent for the use of gas taken from wells drilled under the lease. The controversy arises upon the construction of the provisions of the lease, enough of which to show the point of dispute between the parties reads:

"If oil, gas or other minerals be found on the premises by said second party, all rights, benefits and obligations secured hereby shall continue so long as either can be produced in paying quantities by said second party. If gas is found in any well or wells to justify the expense of saving and casing the same said first parties to have, on demand, sufficient gas from such well or wells, or from any well or wells owned by said second party, free of cost at such well or wells, for domestic purposes on said premises, and shall have the right to lay pipe-lines over any premises leased, owned

or controlled by said second party, for the purpose of piping gas from any well to the dwelling of said parties, the said second party to have the remainder thereof.

"If, however, second party shall use, market or sell gas from any well producing gas, it shall pay said first parties or assigns therefor fifty dollars per year for and during the time such gas shall be sold, marketed or used, except for drilling or domestic use of parties leasing to second party, or his assigns, said payment to be made on each well within sixty days after commencing to sell or market gas therefrom, and annually thereafter while such gas is so sold or marketed from such well."

The defendants filed an answer which contained, after a general denial, a second defense, which reads:

"Said defendants, for a further answer to said separate and several causes of action, allege that the wells which plaintiffs claim are producing gas are also productive oil-wells, from which plaintiffs under their said lease have at all times received the royalty provided for, and that it is necessary to remove the gas therefrom in order to successfully operate said wells for oil, and therefore no rental is. due for gas under said lease."

To this a demurrer was overruled. This ruling is assigned as error. The district court made findings of fact and conclusions of law, which, so far as material to the controversy submitted here, read:

### "FINDINGS OF FACT.

"(3) That before these defendants or any of them became the owners of said lease a number of oil-wells had been drilled on the premises, and the prior owners had laid pipe-lines from several of those wells to their power-house, located on said lease, and utilized the gas therefrom as fuel, and that after the defendants became the owners of the lease they continued to use the gas in the same way.

"(4) That none of said wells were paying gas-wells, and in order to operate them as oil-wells it was necessary to remove the gas therefrom; if not burned, permit it to escape in the air.

"(5) That the use of gas from any or all of said wells was purely incidental to the main business of pro-

ducing oil on said premises, and that the plaintiffs have received their royalties regularly from each of the wells from which gas was burned.

"(6) That the plaintiffs have been paid nothing from the date of making said lease by these defendants or any other person as a royalty or rental for gas used."

### "CONCLUSIONS OF LAW.

"(1) As a first conclusion of law I find that the defendants nor any of them are liable for an unpaid rental or royalty for gas used prior to the time they became the owners of said lease.

"(2) As a second conclusion of law I find that the defendants nor any of them are liable for rental or royalty for gas used since they have become the owners of said premises: (1) For the reason that plaintiffs have received oil royalties regularly from these same wells, and they are not entitled to double rental; (2) for the reason that a fair and reasonable construction of said lease does not show such to have been the intention of the parties, but the intention was the lessees should pay a royalty on each gas-well or wells that 'justified the expense of saving and casing the same.' "

*W. R. Cline,* and *J. Q. Stratton,* for the plaintiffs in error.

*Ossian Cameron,* and *C. S. Denison,* for the defendants in error.

The opinion of the court was delivered by

GRAVES, J.: It seems clear from the provisions of the lease that it contemplated the production of both gas and oil, and whether from the same or separate wells was not considered material. In either case the parties would naturally expect to receive the benefits due them under the provisions of the lease. Some of the wells in controversy produced both oil and gas.

The defendants seem to understand that in such a case the well must be regarded either as a gas-well or an oil-well, depending upon which predominates. The district court, in its findings, appears to have taken the same view. Upon this conclusion a finding seems to be predicated to the effect that if oil predominates

it is an oil-well, and gas may be used by the defendants for their own purposes without accounting to the lessors for any part thereof.

It is claimed that the defendants are liable for gas only when there is a quantity sufficient to justify the expense of saving it and casing the well for that purpose. There is a clause in the lease which, standing alone, would apparently justify such a conclusion, but immediately following this clause, and apparently for the purpose of avoiding such a construction and to prevent any trouble or misunderstanding as to when a well was producing the stipulated quantity of gas, the further condition was added: "If, however, second party *shall use,* market or sell gas from any well producing gas, it shall pay," etc. This indicates that gas shall be paid for if used by the defendants for any purpose other than for drilling, the purpose for which the gas is used by the defendants, rather than the amount produced by the well, being the test as to when rent shall be paid. If the liability of the defendants for gas used by them depended upon the quantity produced by the well, a controversy might arise whenever the lessors insisted that there was enough to justify casing the well for that purpose. This provision obviates such trouble and embarrassment, and apparently was inserted for that purpose. The defendants have had the benefit of the lessors' gas, and no good reason has been shown why it should not be paid for. The fact that this might compel the defendants to pay rent for gas and royalty for oil out of the same well does not seem important. The lessors should of right have what oil and gas their premises produce, whether it is taken from one well or several.

The second defense of the answer fails to state a defense to the petition, and the demurrer thereto should have been sustained. The judgment of the district court is reversed, with direction to sustain the demurrer to the second defense of the answer and proceed in accordance with the views herein expressed.