# CHARLESTON.

## PRICHARD V. FREELAND OIL COMPANY.

Submitted September 18, 1917. · Decided October 2, 1917.

1. MINES AND MINERALS—*Oil and Gas Lease—Construction—Gas Rentals.*

    Where a lease for oil and gas not only reserves as royalty one eighth of all the oil produced, but also a stipulated sum "for each and every gas well drilled on said premises," the "payment to be made on each well within sixty days after well is completed, and to be paid yearly thereafter while it is a gas well," the rights of the lessor to the gas rental do not necessarily depend on whether the particular lessee or some operator can market the gas or whether the same is or can be marketed by him off the premises, but whether the well is a gas well within the proper meaning and intention of the contract. (p. 788).

2. SAME—*Oil and Gas Lease—Gas Rental.*

    Nor will the fact that a particular well drilled under such lease is an oil well and is operated as such and produces large quantities of oil, and the royalty oil reserved is paid the lessor, excuse payment of the gas rent provided thereby, if in fact and within the true intent and meaning of the contract the well is also a well from which gas might be produced and sold at a profit. (p. 790).

Error to Circuit Court, Marion County.

Action by Charles A. Prichard against the Freeland Oil Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Neely & Lively,* for plaintiff in error.

*Harry Shaw* and *Scott C. Lowe,* for defendant in error.

MILLER, JUDGE:

The main question now presented, as on the former hearing, 75 W. Va. 450, is whether the well drilled on plaintiff's land and operated by defendant for seven or eight years as an oil well was also and for the same period a gas well within the meaning of the contract, providing for "three hundred ($300.00) dollars per year for the gas from each and every

gas well drilled on said premises", and entitling plaintiff to the gas rental sued for.

On the new trial awarded the result was a verdict and judgment for plaintiff for $2,472.62, the aggregate of the principal and interest on each of the seven annual installments of rent sued for from the date such installments are alleged to have become due to the date of the verdict and judgment.

On the former hearing we defined "gas well", as employed in the lease, and interpreted in the light of all the facts and circumstances surrounding the parties, their relation to each other, the objects and purposes of entering into the contract, and what they subsequently did under the contract, as a "gas well, which considering its location with reference to any market for gas, its capacity as a gas producer, can be profitably operated as such, and not a well producing oil in large quantities and some gas and operated for many years by lessee as an oil well, and without demand for gas rental by lessor." We also held that the fact that some gas is found in one or more of the sands penetrated in drilling under such a lease, and is afterwards run from the casing head into a gas line from wells on an adjoining lease operated by the same lessee, and the gas from all utilized in operating the wells on both properties, according to the custom prevailing among all operators does not render the lessee liable to the lessor for the annual gas rentals provided for in such lease.

On the second trial before the court and jury the parties prosecuted and defended the action with the view of bringing themselves within the limits of our former decision, and the instructions given to the jury at the instance of each of the parties, based on the evidence adduced, fairly and correctly propounded to the jury the law of the case as formerly declared.

The lease by its terms gave to the lessor right to the gas rental "for each and every gas well drilled on said premises", the "payment to be made on each well within sixty days after well is completed, and to be paid yearly thereafter while it is a gas well." It will be observed that the rights of the lessor

are not made to depend on whether any particular lessee or operator can market the gas, nor whether gas is or can be used or marketed off the premises, or so long as the same is used or marketed therefrom, but whether the same is a "gas well" within the meaning of the contract, and so long as the same "is a gas well."

While, as indicated, in the opinion on the former hearing, the fact that the well in question was drilled and operated for so many years as an oil well of considerable caliber and large oil royalties paid the lessor, is an element to be considered in the interpretation of the contract, the fact that it was clearly an oil well entitling the lessor to the oil royalties paid or delivered to him, would not preclude him from his right to the gas rental, if within the proper meaning and interpretation of the lease the well was in fact also a gas well. It would be inconceivable that if under such a lease a well should produce not only oil but gas also in large quantities, the lease should be so interpreted as to excuse payment of either the oil or gas rental. If the well should turn out to be productive of both oil and gas in paying quantities the terms of the lease would reasonably call for payment of the rent reserved or stipulated for both products. And the evidence discloses that as a matter of fact oil and gas rentals were paid by others on wells located in the same vicinity as the Prichard well, when they were productive of both products in paying quantities. In *Mathes* v. *Shaw Oil Co.*, (Kan.) 101 Pac. 998, the lease involved, as in this case, contemplated the production of oil and gas, and whether from the same or separate wells was not considered material. In that case the court said: "The lessee has had the benefit of the lessor's gas, and no good reason has been shown why it should not be paid for. The fact that this might compel the lessee to pay rent for gas and royalty for oil out of the same well does not seem important. The lessor should of right have what oil and gas his premises produce, whether it is taken from one well or several." And in *Indiana Natural Gas & Oil Co.* v. *Wilhelm*, 86 N. E. 86, the judgment for plaintiff for gas produced from wells producing oil at the same time was affirmed on like principles.

On the last trial the evidence showed that numerous oil and gas companies were, at the time of the drilling of the well on the Prichard land, engaged in drilling for oil and gas, and that several gas lines were in operation supplying gas for domestic purposes to the people of nearby or adjoining towns. Defendant took testimony tending to show that an effort was made by it to dispose of the gas in this well or from wells drilled on adjoining territory to one or more of these gas companies without success, and that it had no market at that time for the gas, and could not profitably have disposed of it at that time elsewhere. But by the terms of the lease its ability or inability to dispose of the gas was not the sole test in determining the rights of the lessor. These rights were fixed by the terms of the lease properly construed. The principal test was whether the well was a "gas well", and so long as it was a "gas well" within the meaning of the lease. While the evidence of the plaintiff may be said to have magnified the caliber of the well, and that of the defendant tended to minimize it, there was ample evidence from which the jury were justified in finding that the well involved had a very strong rock pressure and a capacity of from a million to a million and a half cubic feet of gas per day, and one of the principal witnesses for the defendant, himself engaged in the gas business and in drilling for and transporting gas from the same field, frankly admits that a gas well of that capacity would surely be regarded a gas well. One of the plaintiff's witnesses, an expert, it seems, actually gauged the well shortly after it was drilled into the gas sand, and gave it as his opinion, that the well would produce a million or better cubic feet per day. Plaintiff himself and other witnesses give evidence to the same effect.

It is contended, however, that it was impracticable to operate the well both as an oil well and a gas well at the same time, and for this reason and according to the principles of interpretation laid down in the former opinion the defendant can not be rendered liable for gas rentals. But there is evidence that the gas was produced from a sand above the

rock in which the oil was found, and that it was entirely feasible with proper equipment obtainable to operate the well for both oil and gas at the same time. There can be very little doubt that if any one of the several gas companies drilling for gas and operating pipe lines in the vicinity of the Prichard well had been the lessee instead of the defendant company, the gas therefrom if producing a million feet per day, would have been turned into the gas line and utilized and sold in the market, or at least conserved and held in storage for a later time when it could be marketed. In either case the lessor would have been entitled to rent reserved in the lease for the gas.

The evidence on the second trial presents a much stronger case for plaintiff than appeared in the record of the first trial presented here and was such as we think he was entitled to have submitted to the jury on the question of fact, whether as construed by the court the well was a gas well within the meaning of the contract, and on the whole we are of opinion that the verdict is not unwarranted by the evidence.

Our opinion therefore is to affirm the judgment.

*Affirmed.*