## WITHINGTON v. GYPSY OIL CO.

No. 8680—Opinion Filed April 23, 1918.

(172 Pac. 634.)

(Syllabus.)

1. **Contracts—Construction — Avoidance of Unreasonable Construction.**

Where the meaning of the language of a contract is doubtful and the same is fairly susceptible of two constructions, that construction must be preferred which makes it fair and such as prudent men would naturally execute in preference to a construction that would make it inequitable, or such as reasonable men would not be likely to enter into.

2. **Same—Construction as a Whole—Intention of Parties.**

The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part.

3. **Oil and Gas—Lease—Action For Accounting—Sufficiency of Petition.**

W., the plaintiff, alleged in his petition that the defendant, G. O. Co., had been producing from each of several oil wells upon the lands of plaintiff gas, the same being commonly spoken of as casinghead gas, and had, in its own nearby plant, reduced or condensed the said gas into the form of gasoline, in which form it had been marketing the same, and for which it had received a very large sum of money, and had not accounted to plaintiff for any part thereof. The lease under which the defendant was operating, which was attached to and made a part of the petition, contained the following provisions with reference to the payment of royalties:

"In consideration of said grant and demise, the parties of the second part agree to deliver to the party of the first part one-fourth of the oil realized from the premises, in tanks, at the well without cost. If gas is found in any well or wells on said premises the party of the first part is to have, upon demand, sufficient gas for domestic purposes free of charge, the remainder with all gas from oil wells to go to the second part [parties].

"If the parties of the second part shall market any gas from any well producing gas, then the party of the first part shall receive therefor at the rate of one-fourth of all the gas so marketed or sold."

Held, that the petition stated a cause of action, and that the trial court erroneously sustained a demurrer thereto.

Error from District Court, Tulsa County; Conn Linn, Judge.

Suit by G. M. Withington against the Gypsy Oil Company. From an order sustaining a demurrer to the petition, plaintiff brings error. Reversed and remanded, with directions to overrule the demurrer.

Chas. W. Grimes, A. D. Follett, and McGuire & Devereux, for plaintiff in error.

James B. Diggs, Rush Greenslade, and William C. Liedtke, for defendant in error.

RAINEY, J. This is an appeal from the order of the district court of Tulsa county, Okla., sustaining a demurrer to the petition of the plaintiff in error, G. M. Withington, filed by him in the district court of Tulsa county, Okla., in an action to recover from the defendant in error, Gypsy Oil Company, a one-fourth interest in all the gasoline produced from casinghead gas taken by it from the 120 acres of land described in the petition, less the cost of converting said casinghead gas into gasoline. The parties will hereinafter be designated as they appeared in the trial court.

The material facts, as alleged in the plaintiff's petition, are substantially as follows: On June 20, 1906, one G. W. Barnes, Jr., executed and delivered to George J. Kobusch and associates an oil and gas mining lease on the land herein involved, which lease was subsequently assigned to the defendant in error, and the title to the land, after the execution of the lease, passed into

the hands of the plaintiff in error. The lease, which is attached to and made a part of the plaintiff's petition, contains the following provisions with reference to the payment of royalties:

"In consideration of said grant and demise, the parties of the second part agree to deliver to the party of the first part one-fourth of the oil realized from the premises in tanks, at the well without cost. If gas is found in any well or wells on said premises the party of the first part is to have, upon demand, sufficient gas for domestic purposes free of charge, the remainder with all gas from oil wells to go to the second part.

"If the parties of the second part shall market any gas from any well producing gas, then the party of the first part shall receive therefor at the rate of one-fourth of all the gas so marketed or sold."

Basing his action on these provisions of the lease, plaintiff proceeds to state his case as follows:

"V. That for about a year last past (precise time being unknown to the plaintiff), the defendant has been producing from each of several oil wells upon the said land gas, the same being commonly spoken of as casinghead gas, and has been, in its own nearby plant, reducing or condensing the said gas to the form of gasoline, and has been marketing the said gas in the form of gasoline: that the defendant has marketed a very large quantity of such gas in the form of gasoline; and has received a very large sum of money therefor, but the plaintiff does not know, and has no means of ascertaining, save by an accounting under the decree of this court, the precise amount of gas which the defendant has so marketed, or the amount of money that has been received by the defendant therefor.

"VI. That by the terms of said lease of June 20, 1906, the defendant is obligated and bound to account to the plaintiff for the proceeds of the one-fourth part of the gas so produced by the defendant, and so marketed by it in the form of gasoline; that the amount so due to the plaintiff is the amount of the gross proceeds from which the defendant has sold, in the form of gasoline, the plaintiff's one-fourth part of an interest in the said gas, less a reasonable allowance to the defendant for the cost to it of reducing or condensing the said gas to the changed form; that is to say, to the form of gasoline, in which it has been sold."

The above allegations are followed by the statement that the defendant has failed to account to the plaintiff for the one-fourth part of the proceeds of the gasoline produced, and by a prayer for an accounting.

In this case it is unnecessary for us to decide whether casinghead gas is oil or gas, since in their briefs counsel for the respective litigants have assumed that it is gas. The correctness, therefore, of the ruling of the trial court depends upon the interpretation and construction of two clauses in the lease, which are as follows:

"If gas is found in any well or wells on said premises, the party of the first part is to have, upon demand, sufficient gas for domestic purposes free of charge, the remainder with all gas from oil wells to go to the second party.

"If the parties of the second part shall market any gas from any well producing gas, then the party of the first part shall receive therefor at the rate of one-fourth of all the gas so marketed or sold."

It is the contention of counsel for plaintiff that, if the contract be read as a whole and given a reasonable construction, one that will give effect to every part of it, the first clause must be construed to mean that the lessor is to have sufficient gas produced on the lease for domestic purposes, free of charge, and that the lessee is to have the remainder, with all gas from oil wells that is used on the premises, and that under the second clause, lessee is to pay for all gas marketed from any and all wells on the premises.

It is the contention of counsel for defendant that a proper construction of the two clauses of the lease would give the plaintiff no interest in the gas produced from an oil well, and that under the terms of the lease casinghead gas produced from gas taken from an oil well was free from royalty. We agree with counsel for defendant that, if the first provision stood alone, the only right the plaintiff would have to the gas produced from the land in controversy, whether from oil wells or gas wells, would be upon demand to have sufficient gas for domestic purposes, free of charge, and that he would not be entitled to a royalty from gas produced from an oil well. But the provision does not stand alone, and must be construed as affected or modified by the clause immediately following, providing, if the lessee "shall market any gas **from any well producing gas** that the lessor should receive therefor at the rate of one-fourth of all the gas so marketed or sold." (Emphasis ours.) These two clauses must be construed together, as it is evident that the parties did not express all of their agreement in either clause. Union Trust Co. v. Shelby Downard Asphalt Co., 55 Okla. 251, 156 Pac. 903; Kansas City Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 Pac. 639.

In arriving at their meaning, we must bear in mind that the primary object of all

rules of interpretation and construction is to arrive at and to give effect to the mutual intent of the parties, as expressed in the contract, and that, where a contract is ambiguous, the true intention of the parties, if it can be ascertained from the contract, prevails over verbal inaccuracies, inapt expressions, and the dry words of the stipulation. We must also bear in mind that it is the duty of the court to place itself, as far as possible, in the position of the parties at the time the contract was entered into; then to consider the instrument itself as drawn, its purposes and the circumstances surrounding the transaction, and, from a consideration of all these elements, to determine upon what sense or meaning of the terms used their minds actually met. Kansas City Bridge Co. v. Lindsay Bridge Co., supra; Union Trust Co. v. Shelby Downard Asphalt Co., supra; Lamont Gas & Oil Co. v. Doop & Frater, 39 Okla. 427, 135 Pac. 392; Nelson v. Reynolds et al., 59 Okla. 168, 158 Pac. 301; Brown et al. v. Coppadge et al., 54 Okla. 88, 153 Pac. 817: Elliott on Contracts, vol. 2, § 1508; 6 Ruling Case Law, § 239.

As to the circumstances surrounding the transaction at the time the lease was entered into, we quote the following interesting statement from the brief of counsel for the defendant in error:

"Again it is a matter of history and common knowledge in the oil industry that the extraction of gasoline from casinghead gas was practically unknown in Oklahoma in 1906, when this lease was made. There was no commercial manufacture of gasoline from the gas of oil wells prior to 1904 in the United States, and there was no plant for such manufacture in the Mid-Continent Field until 1909, or three years after the lease in question was made, when D. W. Franchot installed the first plant at Kiefer, Okla. By the close of the year 1911 there were only seven plants in operation in the Mid-Continent Field, making not to exceed about 2,000 gallons of gasoline daily. For several years after the first plant was installed the industry was in an experimental stage, and as late as 1913 gas from only about 2 per cent. of the total oil wells in Oklahoma was used for making gasoline. See Burrell, Seibert, and Oberfell, Gasoline from Natural Gas, U. S. Bureau of Mines Bulletin, No. 88. * * *"

We understand that a provision giving the lessor sufficient gas for domestic purposes is usually found in all oil and gas leases, and likewise it is usually provided in such leases that the lessee shall have free of charge gas used in developing or operating the property. With these facts and the prin-

ciples above stated in mind, we do not have much difficulty in arriving at the true intent of the parties to the contract. The first clause, with reference to gas, in our opinion, simply means that the lessor is to have gas for domestic purposes, free of charge, upon demand, from gas wells, and that the remainder of the gas from gas wells and the gas from oil wells is to go to the lessee. This provision did not contemplate the marketing or sale of the gas by either the lessor or the lessee, but had reference to private uses to be made of such gas.

We turn now to the second clause. Construing this clause, together with the first clause, by the well-known rules of construction, it is clear to us that the parties intended that, if any gas should be marketed or sold by the lessee, the lessor should receive compensation therefor at the rate of one-fourth of all the gas so marketed or sold. We have read with a great deal of interest and have carefully considered what counsel have to say relative to gas being produced from three classes of wells, to wit: First, a well producing gas from a gas-bearing stratum without oil; second, a well producing gas from a gas-bearing stratum and at the same time producing oil from an oil-bearing stratum, and so to be both an oil well and a gas well; and third, a well producing oil and at the same time producing gas from the oil-bearing stratum known as "casinghead gas"; but we cannot agree with the conclusion that the lessor is not entitled to compensation for gas marketed by the lessee from an oil well producing gas from the oil-bearing stratum known as "casinghead gas." The language, "if the party of the second part should market any gas from any well producing gas," is not limited to gas produced in any one of the forms above mentioned, but is sufficiently comprehensive to include them all, and applies to gas marketed, whether from a well producing gas only or from a well producing both oil and gas, and this construction is not defeated by taking into consideration the preceding clause of the contract. We have been unable to draw any distinction from the language of the contract itself in the gas produced from oil wells and that produced from wells producing gas only.

Referring again to the first clause, if we accept the construction, contended for by counsel for defendant, that the lessor was only to have gas for domestic purposes from gas wells, and that the remainder of the gas from gas wells, with all gas from oil wells, was to go to the lessee, it will be seen that "the remainder" of the gas from gas wells

and the "gas from oil wells" were treated exactly alike, and under this clause both were to go to the lessee. If the contract stopped here, the lessor would not be entitled to any compensation for any gas, but it does not, as we have seen, and the subsequent clause performs the office of a proviso and modifies the first clause by providing that the lessee shall compensate the lessor for gas marketed from "any well producing gas." Certainly an oil well producing gas from any stratum is a "well producing gas."

A similar question was before the Supreme Court of Kansas in the case of Mathes v. Shaw Oil Co., 80 Kan. 181, 101 Pac. 998. The oil and gas lease under consideration in that case contained a clause to the effect that if gas were found in any well sufficient to justify saving and casing, the "lessor may have enough for domestic purposes, and the lessee the remainder." Immediately after this provision in the lease came the following clause:

"If, however, second party shall use, market or sell gas from any well producing gas, it shall pay therefor fifty dollars per year for and during the time such gas shall be sold, marketed or used, except for drilling or domestic use of parties leasing to second parties."

In the opinion the court said:

"It seems clear from the provisions of the lease that it contemplated the production of both gas and oil, and whether from the same or separate wells was not considered material. In either case the parties would naturally expect to receive the benefits due them under the provisions of the lease. Some of the wells in controversy produced both oil and gas. The defendants seem to understand that in such a case the well must be regarded either as a gas well or an oil well, depending upon which predominates. The district court, in its findings, appears to have taken the same view. Upon this conclusion a finding seems to be predicated to the effect that if oil predominates, it is an oil well, and gas may be used by the defendants for their own purposes without accounting to the lessors for any part thereof. It is claimed that the defendants are liable for gas only when there is a quantity sufficient to justify such a conclusion, but immediately following this clause, and apparently for the purpose of avoiding such a construction and to prevent any trouble or misunderstanding as to when a well was producing the stipulated quantity of gas, the further condition was added: 'If, however, second party shall use, market or sell gas from any well producing gas, it shall pay,' etc. This indicates that gas shall be paid for if used by the defendants for any purpose other than for drilling, the purpose for which the gas is used by the defendants, rather than the amount produced by the well, being the test as to when rent shall be paid. If the liability of the defendants for gas used by them depended upon the quantity produced by the well, a controversy might arise whenever the lessors insisted that there was enough to justify casing the well for that purpose. This provision obviates such trouble and embarrassment, but apparently was inserted for that purpose. The defendants have had the benefit of the lessors' gas, and no good reason has been shown why it should not be paid for. The fact that this might compel the defendants to pay rent for gas and royalty for oil out of the same well does not seem important. The lessors should of right have what oil and gas their premises produce, whether it is taken from one well or several."

Even if the language of the agreement were doubtful and susceptible of two constructions, it would be our duty to give it that construction which would make it fair and such as prudent men would naturally execute in preference to one that would make it inequitable or such as reasonable men would not be likely to enter into. Kansas City Bridge Co. v. Lindsay Bridge Co., supra; Union Trust Co. v. Shelby Downard Asphalt Co., supra; Elliott on Contracts, vol. 2, § 1510.

We think the petition sufficiently alleges that the defendant is taking the gas from plaintiff's property under the terms of its lease for which it has not compensated him. The petition may not ask for an accounting on the right basis, but it is unnecessary for us to express an opinion at this time on that phase of the case, since the prayer of the petition forms no part of it, and relief may be granted the plaintiff in accordance with the facts stated in his petition rather than pursuant to the prayer. Burnham-Hanna-Munger D. G. Co. v. Hill, 17 N. M. 347, 128 Pac. 62; Smith v. Smith, 67 Kan. 841, 73 Pac. 56; Willoughby v. Summers, 62 Okla. 98, 162 Pac. 206.

It follows that the judgment of the trial court should be reversed and remanded, with directions to overrule the demurrer.

All the Justices concur.