**SCHUESSLER et ux.**

v.

**NORTHEAST DEVELOPMENT CO. et al.**

No. 35790.

Supreme Court of Oklahoma.

Dec. 1, 1953.

Rehearing Denied Dec. 22, 1953.

Cecil W. Rote, Lester L. Suenram, Charles D. Scales, Oklahoma City, for plaintiffs in error.

Ames, Daugherty, Bynum & Black, Oklahoma City, for defendant in error John J. Coates.

Harold Dodson, Oklahoma City, for defendant in error Northeast Development Co.

Rittenhouse, Hanson & Green, Oklahoma City, for defendant in error B. C. Cochran.

CORN, Justice.

The matter which provided the basis for the litigation resulting in this appeal may be summarized as follows: V. L. Downing was president of the Northeast Development Co., a corporation, which owned a 12 unit apartment house in Oklahoma City, Oklahoma. The property was listed for sale with defendant Cochran, a licensed broker, who advertised same for sale. As a result of such advertising he was brought in touch with plaintiffs and in April, 1950, began negotiations directed toward their purchase of the property. These negotiations culminated in plaintiffs signing a contract of purchase either on April 26th or April 28th. In any event the contract, or offer to purchase, was accepted by Downing and returned to plaintiffs and on April 28th they made a $500 earnest money payment.

The contract provided for plaintiffs' purchase of the property for $103,000, with a down payment of $12,500 to be made upon closing of the transaction. This contract also provided:

"I, or we, the undersigned hereby agree to purchase the property here-inafter described, to-wit: 1921–25–31 NE 25th street, Oklahoma City, Okla., being a 12 family apartment house, subject however and on condition that the seller thereof has good and valid title, in fee simple and agrees to * *. On the following terms the total price to be One Hundred Three Thousand Dollars of which $12,500.00 is to be paid in cash at the time of closing, the balance to be on the following terms, to-wit: Subject to a first mortgage not to exceed $90,500.00 payable at the rate of $645.00 per month including principal, interest, taxes and insurance. Seller to assign all reserves. The stoves and refrigerators in the 12 units are a part of this sale. The seller is to pay all ad valorem taxes to and including the year 1949 and special assessments, if any, to and including 1949. Rents and interest, if any, to be pro rated on date of closing. * * *"

The contract further provided for closing the transaction within 15 days, at which time the accrued rents and interest were to be prorated to date of closing, plaintiffs to have possession upon date of the deed.

The General American Life Ins. Co. owned the first mortgage, a Federal Housing Authority mortgage which, in addition to requiring monthly payments of principal and interest, further required the mortgagors to make deposits to cover taxes, insurance and mortgage insurance.

At this point it may be noted that on April 28, 1950, defendant Cochran wrote two instruments relative to the contract plaintiffs signed. The first was a signed statement that if plaintiffs were unable to secure financing to handle this transaction, he agreed to refund their earnest money payment. The second instrument was a letter to defendant Downing which stated:

"It is understood that in signing the contract for the sale of the apartment at 1925 NE 25th street, that the purchaser is to buy and pay for a new insurance policy on the date of closing and that any money in the escrow accounts that are surplus above the amounts necessary to pay for the escrow items will be retained by you."

The Coates Abstract Co., defendant herein, was retained to handle closing of the transaction. May 12, 1950, plaintiffs appeared at defendant's office at the appointed time, but neither Cochran nor Downing appeared. An employee (Funk) of the Coates Abstract Co. had prepared a closing statement based upon the mortgagee's records. The closing statement as originally drawn (by Funk) included the escrows held by the mortgagee, amounting to $2,256.90, but Downing refused to go through with the deal on this basis. The closing statement was redrafted so that plaintiffs were charged with an insurance premium ($452.50) and the remainder of the escrows ($1,211.11) were drawn down by Downing. Plaintiffs accepted conveyance of the property on the basis of this closing statement and completed the down payment of $12,420.81, as calculated in the closing statement.

In August, 1950, it was discovered that certain refrigerators and stoves mentioned in the contract had been removed from the premises and the mortgagee was insisting same be replaced. After some discussion demand was made upon Downing and he returned part of these items and replaced others. Complaint was made of Downing having drawn down the escrow monies upon the basis of the final closing statement, and on September 5, 1950, demand was made upon Cochran, by plaintiffs' attorney, for refund of $1,211.11 allegedly overpaid on the purchase price. Continued discussions eventually culminated in plaintiffs filing this action.

In April 1951, plaintiffs filed a second amended petition setting forth the foregoing circumstances and alleging these defendants had entered into a conspiracy to defraud plaintiffs and deprive them of the fruits of their bargain, by retaining the surplus over and above the amounts necessary to pay the escrow items; that plaintiffs relied upon statements that they were to receive the escrow funds and thus were fraudulently misled into paying the balance shown to be due by such statement when defendants knew the $1,211.11 had not been accounted for therein. Plaintiffs sought recovery of this amount as damag-

es. The second cause of action asserted plaintiffs' right to recover $3,633.33 as exemplary damages by reason of defendants having acted with fraud and malice.

The Northeast Development Co. answered by a general denial. By way of affirmative defense it plead a settlement by check ($445.21) given for replacement of refrigerators removed from the building before possession was given and which could not be returned.

The Coates Abstract Co. answered by a general denial and as an affirmative defense plead that the transaction was closed strictly in accordance with the terms of the contract and the instructions of plaintiffs and their agent.

Default judgment had been entered against Cochran for $1,211.11, but by agreement his petition to vacate such judgment was permitted to be treated as his answer. Therein defendant admitted he handled the transaction as agent, but asserted this was done in accordance with plaintiffs' instructions and for their interests; that he neither made a profit nor permitted advantage to be taken of plaintiffs. Plaintiffs replied to the separate answers by a general denial.

The evidence showed plaintiffs, parties of some experience in property dealings, entered into negotiations concerning this property and ultimately signed the purchase contract as related. When plaintiffs appeared at Coates Abstract Co. (May 12, 1950) to close the deal, neither Downing nor Cochran appeared, and the agent (Funk) suggested going ahead and closing the deal in accordance with the (closing) statement he had prepared; since he assured plaintiffs same was correct and Coates Abstract Co. was a bonded concern so they had nothing to worry about. Plaintiffs signed numerous papers which Funk already had prepared, including a premium note for four years insurance amounting to $1,354.50. Later upon receipt of notice from the purchaser of this note, plaintiffs obtained cancellation of same by payment of $90 interest. Both plaintiffs testified that Cochran gave them to understand that all escrow reserves were to be assigned to them, and that they expected to receive such reserves and relied upon such state-

ments, but were unable to understand the closing statement sufficiently to know whether they had received credit therefor.

Plaintiffs offered further testimony from their attorneys and public accountants. The substance of such witnesses' testimony was that by their calculations plaintiffs did not receive $1,211.11 under the closing statement to which they were entitled. One witness (La Coste) testified on cross-examination that if the items shown in the closing statement were to be prorated down to the date of closing the statement was correct, but if such items were not to be prorated, but were to have been credited to the buyers then the statement was incorrect.

At the close of plaintiffs' evidence the defendants interposed separate demurrers upon the ground such evidence failed to establish a cause of action against the defendants.

The trial court sustained the (separate) demurrers to plaintiffs' evidence and dismissed the action. In sustaining the demurrers the trial court stated:

"* * * In explaining this matter to you, and sometimes the jurors like to know why certain things are done, the court, as a matter of law, has determined that this action was based upon interpretation of a contract; that the defendants interpreted the contract one way, which went to the total consideration to be paid, and the evidence in this case discloses that the clause in the contract where the seller agreed to assign all reserves was used by the plaintiffs and defendants in settling this matter, both of them understanding thoroughly the nature of their acts. That is what the court has determined from this evidence as pertaining to the assignment of all reserves, and the closing statement complied with the terms of the contract which provides a consideration of $103,000 for the entire deal. The court finds from his interpretation of the contract that in computing the statement that was made there wasn't any fraud or malice, or anything like that, and that no conspiracy existed, nor was there any wrong. It was just simply their interpretation of the contract, which was acquiesced in and understood by the plaintiffs in this case, although there is testimony here that they didn't understand the figures in the statement as rendered to them, which is beside the point here. The plaintiffs contend that the $103,000 total consideration that they were to pay, that they obligated themselves to pay, they contend that they were to receive back out of the deposits made to the mortgagee, $2256, that was on deposit there for reserves, without any strings on it at all. That was their interpretation of it. I think both sides are perhaps honest in their interpretations of this contract, and that being the case, there would be no conspiracy, and so consequently the court has sustained the demurrers in this action and there will be nothing to submit to you. * * *"

Three propositions are urged as grounds for reversal of the trial court's judgment. Each of these is a lengthy statement of what plaintiffs conceive the issues to be as derived from their interpretation of the evidence. Numerous authorities from this court and other jurisdictions are relied upon as supporting plaintiffs' position. Under this record it is unnecessary to dwell at length upon the argument offered by plaintiffs, or to discuss the authorities cited supporting such theories.

The basis of plaintiffs' claim of conspiracy is evolved from testimony that Cochran induced them to enter into this contract by advising them the escrow funds were to be theirs, coupled with the fact Cochran wrote defendant Downing that the escrow funds in excess of that required to pay necessary escrow items were to be retained by Downing. Since this letter passed between the defendants without plaintiffs' knowledge they conclude same was a "secret agreement", definitely establishing defendants' conspiracy to deprive plaintiffs of the fruits of their bargain. These matters then are coupled with the fact that the closing statement which finally provided the basis for settlement of the transaction was drawn by an employee of Coates Abstract Co. in compliance with the "secret agreement",

rather than upon the basis which they (plaintiffs) interpreted the language of the contract to call for.

Plaintiffs' argument relative to formation of existence of the alleged conspiracy is both inconsistent and inclusive. The petition alleged such conspiracy was in full force when the contract was executed April 28, 1950. One of plaintiffs' attorneys testified defendant Coate's agent advised the closing statement originally was drawn so as to give plaintiffs credit for the escrow accounts; Downing refused to deal upon this basis, and the statement was redrafted in the form which finally was used in effecting settlement. However, plaintiffs argue that the "secret agreement" between Downing and Cochran was not disclosed to plaintiffs, or to Coate's agent, Funk, until after one closing statement had been prepared. Thus it is plain both the plaintiffs' evidence, and their argument based thereon, are directly contrary to their allegations concerning formation and existence of any conspiracy among these defendants at the time the parties entered into this contract.

██ It may be conceded, as urged by plaintiffs, that a conspiracy may be established by circumstantial evidence. 15 C.J. S., Conspiracy, § 29, and cases cited. However, such rule is subject to the qualification set forth in the succeeding § 30 of 15 C.J.S. as follows:

"To prove conspiracy. As laid down in Corpus Juris which has been quoted and cited with approval, in order to establish a conspiracy evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise, otherwise it is insufficient to prove a conspiracy. Disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. It is not necessary, however, that the conspiracy be proved to the same degree of certainty, by evidence beyond a reasonable doubt, as on a trial for a criminal conspiracy; but the evi-

dence must be, and is sufficient if it is, full, clear, and convincing or satisfactory, and the inference therefrom of the conspiracy must be reasonable, probable, and unstrained. The evidence must lead to belief; and must do more than raise a mere suspicion on which a conjecture or speculation as to the existence of the conspiracy might be based.

"Conspiracy generally may and must be established by a preponderance of the evidence; but there is authority to the effect that it cannot be sustained by a mere preponderance of evidence since it is met by a presumption of innocence."

Application of the rule quoted by this court may be observed in Nissen v. Andres, Rec., 178 Okl. 469, 63 P.2d 47.

The evidence herein reflects plaintiffs were people of some business experience. They understood this contract required them to pay $12,500 down payment for the property. When the various items providing the basis for computation in the closing statement were entered plaintiffs had sufficient understanding of the details to recognize that they were entitled to credit for the escrow items which were prorated to them in the way of accrued taxes and mortgage insurance, and a pro rata portion of the May rents already collected by defendant. Plaintiffs understood and accepted the closing statement which credited them with these items. They understood the amount which they were required to pay over in final settlement was less than the total down payment called for under the contract, and willingly closed the transaction upon this basis. Upon reconsideration of their agreement they concluded that defendants had misled them, and that this was accomplished by means of a conspiracy entered into between these defendants. We are unable to accept the interpretation of the evidence relied upon by plaintiffs as being clear, convincing and satisfactory proof of a wrongful, preconceived plan on the part of these defendants.

██ The other matter requiring consideration involves plaintiffs' argument that the trial court erred in construing the con-

tract entered into between the parties. The court pointed out that this action resulted from interpretation of the contract, plaintiffs interpreting the matter in one way while defendants construed the same language to mean something else. It must be conceded that the trial court was correct in this evaluation of the situation, particularly since the parties themselves were in total disagreement as to what was intended by the contract provision relative to handling of the escrow accounts. In such a circumstance it was for the trial court to examine the entire contract and declare the meaning expressed by the terms thereof. Standard Accident Ins. Co. v. Goldberg, 120 Okl. 108, 250 P. 892.

Examining the contract in this light it was clear to the trial court that the terms of the contract could not be met under the interpretation placed thereon by plaintiffs. Had their interpretation been accepted then that part of the agreement providing for a consideration of $103,000 would have been of no effect, since plaintiffs would have been enabled to purchase the property for a substantially smaller sum than the expressed consideration. However, by giving a reasonable construction of the provision concerning assignments of the escrow reserves it was possible to give effect to every part of the contract.

The transaction was completed upon the basis of defendants' understanding of the meaning of the contract terms. In so doing plaintiffs received credit for the items which were to be prorated, and in accepting the closing of the transaction upon this basis plaintiffs, as found by the trial court, acquiesced in closing and settlement of the deal upon the basis defendants contended was provided by the contract. The trial court accepted the construction of the contract which was fair and reasonable, which was to be preferred over the construction which would have made the contract unreasonable and inequitable. Withington v. Gypsy Oil Co., 68 Okl. 138, 172 P. 634.

There are numerous matters submitted in the briefs of the parties in presentation of their arguments on appeal. Having concluded the trial court was correct in finding there was no evidence of a conspiracy herein, and that a reasonable interpretation of the contract was that the questioned provision was intended only to provide that plaintiffs were to receive the benefit of that portion of the escrow reserves which had been earned up to the date the transaction was closed, we are of the opinion the trial court properly sustained defendants' demurrers to plaintiffs' evidence.

Judgment affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.