## SAC CITY CANNING CO. v. GRIFFIN GROCERY CO.

No. 13697—Opinion Filed April 29, 1924.

### 1. Contracts—Construction to Support.

A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done with-

out violating the intention of the parties.

### 2. Same—Construction by Acts of Parties.

Where the meaning of the terms used in a written contract is not clear, the subsequent acts of the parties showing the construction they have put upon the agreement themselves are to be looked to by the court.

### 3. Same—Uncertainty.

If there be any uncertainty in a contract, the language of said contract should be interpreted most strongly against the party who caused the uncertainty to exist.

### 4. Same—Judgment Sustained.

Record examined, and measured by the rules of construction of written contracts under the statutes of this state, the opinion of the lower court is held to be correct.

(Syllabus by Thompson, C.)

· Commissioners' Opinion, Division No. 5.

Error from District Court, Pittsburg County; Hal Johnson, Assigned Judge.

Action by the Sac City Canning Company, a corporation, against the Griffin Grocery Company, a corporation, for the recovery of $2,250 and interest and costs upon a written contract. Judgment for defendant. Plaintiff brings error. Affirmed.

George M. Porter and John L. Fuller, for plaintiff in error.

Horton & Gill, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Pittsburg county, Okla., by the Sac City Canning Company, a corporation, plaintiff in error, plaintiff below, against the Griffin Grocery Company, a corporation, defendant in error, defendant below, to recover the sum of $2,250, and interest from the 31st day of December, 1920, at the rate of six per cent. per annum until paid, and for costs, upon a written contract.

The parties will be referred to as plaintiff and defendant as they appeared in the lower court.

Plaintiff is a foreign corporation and the defendant is a domestic corporation.

The plaintiff declares upon the contract whereby it contracted to sell to the defendant 2500 cases of No. 2 cans of standard corn at $1.30 per dozen, or a total number of 5,000 dozen. The contract is as follows:

"Sac City, Iowa, Feb. 14th, 1920.

"Sac City Canning Company
"Seller                          1000 as early
"Sold to                         shipment.
"Griffin Grocery Company,
"Buyer,

"McAlester, Okla.

"For Delivery Season 1920.

"— Cases No. 2 Cans Fancy Country Gentleman Corn, at — per dozen.

"— Cases No. 2 Cans Fancy Evergreen Corn at — per doz.

"— Cases No. 2 Cans Extra Standard Corn at — per doz.

"2500 Cases No. 2 Cans Standard Corn at $1.30 per doz.

"Privilege Buyer's Labels.

"F. O. B. Cars at factory.

"Delivery: Not less than 50 per cent. of entire order to be shipped as fast as the season's pack is made ready therefor.

"Should any portion of the order remain undelivered on the 31st day of December, 1920, the same shall be invoiced on above mentioned date. The seller agreeing to continue to store the same free of expense to buyer until March 1 following, at which time buyer agrees to order the goods shipped.

"Terms: Sixty days acceptance or cash, less one and one-half per cent. if paid within ten days from date of invoice.

"Claims for swells will be allowed only after goods have been returned to seller for identification.

"If buyers labels are used, seller to allow $1.00 per 1000 labels allowance.

"Sellers not liable for any nondeliveries if caused by fire, strikes, weather casualties, or causes beyond their immediate control.

"Proportionate quantities only to be delivered in case of necessity.

"Remarks. Seller guarantees own price against decline until October 31st, 1920.

'One-half to be delivered when packed, balance buyer's option to December 31st, 1920.

"Purchaser: Griffin Grocery Company,
"J. T. Griffin, President.

"Broker McManus-Heryer Brokerage Co.

"Address————————

"The above contract accepted this 24th day of Feby. 1920.
"Sac City Canning Company,
"M. W. Jones, Manager.

"Note: This contract is made in three copies, one for the buyer, one for the seller and one for the broker. On the reverse side indicate the labels desired and quantity of goods under each label."

Plaintiff claims to have stood ready to have carried out said contract with the defendant from and after the 24th day of

October, 1920, up to and including the 31st day of December, 1920, and that defendant refused to accept and receive said corn, and that its price did not decline until after the 31st of October, 1920, and that by the refusal on part of the defendant to accept, receive, and pay for the corn, under the contract, the plaintiff had suffered loss and damage in the sum of 45 cents per dozen cans or the total sum of $2,250.

Defendant answered by way of general denial, and, further, that the corn was contracted through brokers at a time when it could not be known what the current price on the market would be at the time the goods were packed and ready for delivery, and that it entered into the contract for the purchase of the corn with the further agreement and understanding that said price should be reduced at the time of delivery to the current market price then prevailing for No. 2 cans standard corn, and that the provision, "Seller guarantees own price against decline until October 31st, 1920," was placed in the contract, and that the true intent and meaning of said language and words is that the seller would guarantee said price of $1.30 against the market decline of No. 2 cans standard corn, and that plaintiff would sell and bill to defendant said corn, or such portion thereof, as should be ordered out, on or before October 31, 1920, at the current market prices in case the same should be less than the price stated in the contract; that the current market price on corn of this character had declined before the date mentioned in the contract and was selling at 95 cents per dozen cans; that defendant requested plaintiff to ship the corn at the current market price, which plaintiff refused to do; that, on the 30th day of September, 1920, the current market price was $1 per dozen f. o. b. factory, Sac City, Iowa, and that defendant asked for 1,000 cases to be shipped at the then market price; that it had always been willing to take and accept said corn at the current market price up to the 31st day of October, 1920, but that the plaintiff refused to carry out and perform the terms of said contract or to allow them a reduction on said corn to the current market price; that on account of the breach of the contract by plaintiff the defendant was discharged from any obligations to pay or accept any of said corn provided for in said contract.

Plaintiff replied by way of general denial.

The case was tried to a jury and at the close of the testimony on part of the plaintiff, defendant interposed a demurrer for the reason that no cause of action had been proven in favor of the plaintiff and against the defendant, which demurrer was by the court sustained, the jury discharged, and the cause dismissed, to which action of the court the plaintiff reserved its exception.

A motion for a new trial was presented heard, and overruled; exceptions reserved by plaintiff; judgment pronounced against the plaintiff, from which judgment of the court the plaintiff appeals to this court for review.

The attorneys for plaintiff set up three assignments of error, but content themselves with arguing the same under the following head:

"That the court committed error in sustaining the demurrer of the defendant to the evidence of the plaintiff, for the reason that the sole question involved, and which was considered by the lower court, was that of the interpretation of the price guarantee clause in the contract."

The evidence consists of the contract, letters, and telegrams, which passed between the plaintiff and defendant, and the testimony of owners and superintendents of canning factories in the state of Iowa, showing the price of corn of this quality and character to have been about $1 per dozen in the latter part of September, 1920, and to have been 95 cents per dozen on the first of October, 1920, and from the 14th of October to the 25th of October, to have declined to 90 cents down to 85 cents per dozen; that on December 31, 1920, it was worth about 72½ cents to 80 cents per dozen; that on September 24, 1920, the defendant wrote plaintiff that it was getting quotations of $1.05 per dozen from Ohio canners, and asked what reduction plaintiff was going to give it under the contract, and later sent plaintiff a telegram that if it would not reduce the price that the contract would have to be canceled. Plaintiff replied that prospects of reduction were not encouraging, but would give something definite in a few days, and on October 9, 1920, plaintiff wrote defendant that it did not feel disposed to accept the cancellation of the order, to which the defendant replied that it was getting quotations from Ohio and Indiana at 87½ cents per dozen, and that if the guarantee in the contract meant anything that plaintiff would bill the corn at a price somewhat in line with what it could buy of the same quality elsewhere, and that for plaintiff to insist on the $1.30 per dozen was not in keeping with the spirit of the contract and that if plaintiff did not wire it a price in keeping with the present price of like quality of corn that it would consider the contract canceled; that it had definitely decided not to take the corn at

$1.30 per dozen, if it could avoid it, and it thought it could.

Plaintiff replied, refusing to make the reduction and offered to ship the corn at the contract price, claimed by it at $1.30 per dozen, and on October 14th, the defendant wrote plaintiff that since it had refused to revise its price in line with what standard corn could be bought for from other packers, that it considered the contract canceled and so advised plaintiff.

This case seems to turn upon the construction of the contract as to whether the provision of the guarantee referred to the current market price or whether it referred to an arbitrary price set by plaintiff, upon which it refused to make a reduction, although the market price was from 30 to 45 cents less than the price mentioned in the contract.

Attorneys for plaintiff contend that the contract must be interpreted in the sense in which the promisor believed at the time of making it that the premisee understood it, and cites the case of Rider v. Morgan, 31 Okla. 98, 119 Pac. 958, in which it was said where the terms of a contract are not clear, the subsequent acts of the parties, showing the construction put upon the agreement, are to be looked to by the court, and that the determination of the meaning of a written contract is ordinarily a question of law for the court and not one of fact for a jury, but where it depends upon extrinsic facts as to which there is a dispute as to construction it is a mixed question of law and fact, and is for the jury to determine under proper instruction by the court, and, to like effect, they quote from the case of Kingfisher Mill & Elevator Company v. Westbrook et al., 79 Okla. 188, 192 Pac. 209.

If this case should be measured by the acts of the parties as to what was understood by the contract, it is very clear that the defendant understood this clause to mean that it was to have a reduction in the price of the corn to meet the current market price at the time of the delivery, for the defendant, before the date of delivery, writes its first letter asking for a reduction and quotes the market price that corn had been offered to it by other canning companies, and in each and all of its letters and telegrams to plaintiff it makes the same demand and offers at all times to take the corn at the current market price, that it could get the same kind and quality of corn from other canning companies.

If the hard and fast rule contended for by attorneys for plaintiff, that plaintiff could fix a price and make its contract and decline to make any sales below that price, notwithstanding the fact that all other canning companies engaged in the same business were making a price from 30 to 45 cents less than the arbitrary price fixed by plaintiff, there would be no sense or reason for placing a guarantee in a contract such as was placed in the contract sued on in the instant case. The statute law of Oklahoma, as found in section 5025, Comp. Stat. 1921, provides as follows:

"When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be as much money as the object of the contract is reasonably worth."

The above quoted statute seems to be in point, and we think it is controlling in this case. The plaintiff, in our view of the case, was only entitled, under the contract, if it would be given a reasonable and sensible construction, to have the defendant pay it for corn contracted to be shipped as much money as the corn was reasonably worth, and this the defendant offered to do in its numerous letters and telegrams. The plaintiff as an interested party could not retire within itself and go out of business and hold the parties to whom it had made the contract with the guarantee to the arbitrary price sought to be done by the plaintiff in this case. The statute law of Oklahoma, as found at section 5046, Comp. Stat. 1921, says, in regard to interpretation of contracts, that:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

Then, measured by the rule laid down by the statute above quoted, there would have been no reason for the insertion of this guarantee in the contract, if the arbitrary price of $1.30 per dozen, provided for in the contract, were to control absolutely, but this guarantee was evidently placed in the contract for the purpose of holding out as an inducement to the buyer the hope of a lower price. It is obvious that on February 14, 1920, no one did or could know what the probable market value of canned corn for future delivery in the fall or winter, thereafter, would be and it is clear to our mind that it was the intention of the parties, at the time of making of this contract, that the price would be controlled by the prevailing market price at the time of delivery. We do not think the contract is ambiguous or obscure in the light of the facts and circumstances of this

case, and the law will give it that reasonable meaning, which will be presumed to have been intended by the parties without leaving the matter of price decline to the arbitrary and uncontrolled option and choice of the plaintiff in this action. If there be any uncertainty in this contract, sec. 5057. Comp. Stat. 1921, provides:

"* * * The language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. * * *"

This court, in the case of Still v. Cannon, 13 Okla, 491, 75 Pac. 284, quoting Hillard on Sales, says:

"A price is one of the essential elements of the contract of sale. And the price must be certain, or capable of being made certain, If left to be fixed by the vendor or vendee the sale is void."

Then, measured by the rules of construction of contracts, laid down by the statute law of this state and by the authorities, it is our opinion that the proper and correct interpretation and construction of the contract was made by the lower court, and that the plaintiff should not be allowed to exact its "pound of flesh." And that the defendant was correct when it demanded a reduction of the corn to be shipped to the current market price of corn of like kind, character, and quantity.

There are other questions raised by the defendant on the question of mutuality of contracts, and upon the question of whether the contract was void on account of being in restraint of trade, and many authorities cited in support thereof, but we think the court arrived at the correct conclusions in this case and it is our opinion that the judgment of the lower court should be and is hereby affirmed.

By the Court: It is so ordered.