## CONTINENTAL OIL CO. et al. v. FISHER OIL CO.

## FISHER OIL CO. v. CONTINENTAL OIL CO. et al.

### Nos. 485, 486.

Circuit Court of Appeals, Tenth Circuit.
Jan. 6, 1932.

Robert R. Pruet, of Ponca City, Okl. (William H. Zwick, of Ponca City, Okl., on the brief), for appellant Continental Oil Co.

Edmund Lashley, of Tulsa, Okl. (Hal. F. Rambo and Russell B. James, both of Tulsa, Okl., on the brief), for appellee Fisher Oil Co.

Before COTTERAL and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

COTTERAL, Circuit Judge.

The Fisher Oil Company brought this action in a state court against the Continental Oil Company, a Maine corporation, and the successor to its assets and liabilities, the Continental Oil Company, a Delaware corporation, to recover damages for breach of a contract to drill an oil well. The case was removed to the federal court. The defendants' demurrer to the petition was overruled, they filed an answer, a special defense pleaded therein was stricken, and the plaintiff replied, thus making up the issues for trial. A jury being waived, the case was tried before the court upon stipulated facts. On April 15, 1931, as the journal entry shows, the issues were found for the plaintiff, its damages were assessed at $50,000, with interest at 6 per cent. from October 1, 1929,

but the court found against the plaintiff on its additional demand for $12,000, and judgment was rendered accordingly. The defendants have brought a direct appeal, and the plaintiff a cross-appeal.

An original contract was executed on July 25, 1927, whereby the plaintiff, the first party, agreed to assign to the Continental Oil Company (chartered in Maine), the second party, an undivided one-half interest in four leases of 40 acres each, in Seminole county, Okl., for a consideration of $155,000 (which was paid), and the further consideration that on or before April 1, 1929, the second party would drill an oil well on each of the tracts with due diligence to a depth sufficient to test the Wilcox sand and complete the same, so as to include the tanks free of cost to the first party, and in case of failure to do so upon any lease, the first party at its option was entitled to declare the interest of the second party therein terminated, but it was provided that if before April 1, 1929, by reason of intervening oil and gas developments, or other similar causes, second party should determine it to be useless to drill any one or more of the wells, then by mutual agreement it might be relieved of the liability to drill such wells, or without such consent second party might relieve itself of such obligations by reassigning its interest in that particular lease.

That contract further provided that if in any test well oil or gas should be found in paying quantities above the Wilcox sand it should be completed at the equal expense of the parties, and the second party within a time as the parties should agree would commence the actual drilling of another well on such lease on which the initial well was saved, and drill such well to a depth sufficient to test the Wilcox sand, and complete the same with tanks free of cost to first party; and, further, if any such test wells should be a dry hole, it should be plugged at the expense of the second party, which was entitled to remove all materials and equipment thereon as its own property, but if the wells should prove to be paying wells, the first party should be entitled to a one-half interest in the casing and other materials necessary for the completion and operation of the well.

On April 1, 1929, the parties executed a "Modification Agreement," whereby it was agreed for the consideration of one dollar and other good and valuable consideration and the performance of the original agreement, that the Continental Oil Company might delay until October 1, 1929, the commencement of actual drilling on one of the 40-acre tracts therein described, and commencement of a well thereon at that date was to constitute compliance with the original contract applicable to the lease thereon; and it was added, "In all other respects, the agreement of July 25, 1927 shall remain in full force and effect."

We revert to the pleadings. The petition set out both agreements and alleged that on or before April 1, 1929, the Continental Oil Company did not commence a well on the particular 40-acre tract mentioned, or request to be relieved of liability to drill a well thereon or tender to plaintiff a reassignment of its interest in that lease, but between September 20, 1929, and September 28, 1929, tendered to plaintiff several reassignments thereof, and they were refused by the plaintiff, and on November 5, 1929, the Continental Oil Company reiterated its decision not to drill a well on said tract. Damages were therefore claimed in the sum of $75,000, with interest from October 1, 1929.

The defendants answered with a general denial and an admission of the agreements, and added the special defense that it was understood and agreed between the parties that by reason of intervening oil and gas development in the immediate vicinity of the 40-acre tract (which was misdescribed) it would be inadvisable to drill a well thereon; that the parties agreed to an extension therefor of six months from April 1, 1929, to determine whether or not future developments for oil and gas in the immediate vicinity would justify defendants in drilling said well, and the parties further agreed that if on or before October 1, 1929, the defendants determined it was so inadvisable to drill the well, the defendants could relieve themselves of the obligation to drill it by reassigning the undivided one-half interest in that lease; and that prior to October 1, 1929, they so determined and in September, 1929, tendered such reassignment. Wherefore, the defendants prayed that the plaintiff have no recovery against them. As stated at the outset, the foregoing special defense was stricken from the answer.

At the trial, it was stipulated the defendants did not prior to September 20, 1929, tender to plaintiff a reassignment of its interest in the lease upon the 40-acre tract in question, and they did not commence drilling the well and never placed any materials or equipment or performed any labor therefor on said tract; that from September 20, 1929, to November 5, 1929, they tendered to

plaintiff four reassignments of their interest therein, and the plaintiff declined to accept them; that the reasonable cost of drilling a well in 1929 on that tract to a depth sufficient to test the Wilcox sand with tanks included was $62,000, but if it proved to be a dry hole the reasonable cost of drilling the well to that depth, and plugging the well, with the materials and equipment removed by the driller as its property, was $50,000. It was further stipulated that the "Modification Agreement" was prepared by the attorney of the Continental Oil Company.

We consider first whether the defendants incurred a liability for $50,000. The obligation to drill the well by April 1, 1929, was plainly expressed in the original contract of July 25, 1927, subject to a mutual agreement otherwise, and to an option meantime under certain conditions to reassign defendant's half interest before the drilling would be done and be released from liability. That option was not exercised and the drilling was not undertaken. By the "Modification Agreement," the time for drilling was delayed to October 1, 1929, but in all other respects the original agreement was to "remain in full force and effect."

The defendants insist upon application of the rule that the court should assume the position of the parties and consider the instrument, its purpose, and the surrounding circumstances. Crain v. Pure Oil Co. (C. C. A.) 25 F.(2d) 824. And further they contend a construction is preferred which is fair and appeals to prudent men rather than one that is inequitable or an unlikely act of reasonable men. Iron Mountain Oil Co. v. Edwards, 100 Okl. 4, 227 P. 150; Withington v. Gypsy Oil Co., 68 Okl. 138, 172 P. 634. And upon these authorities it is insisted the option to reassign and be released was carried into the modification contract.

These contracts were to be performed in Oklahoma and the laws of that state applied to their performance. Brown v. Ford Motor Co. (C. C. A.) 48 F.(2d) 732. The laws of the state may be condensed as requiring an interpretation of a written contract that will give effect to the mutual intention of the parties, language used governs if it is clear and explicit and does not involve an absurdity, the intention of the parties is to be ascertained from the writing, if possible, subject to other statutory provisions, the whole instrument is to be taken together and every part given effect if reasonably practicable, each clause helping to interpret the others, and an interpretation is required that will make the contract lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties. Sections 5039, 5041, 5042, 5044, and 5046, Comp. St. Okl. 1921.

We think there are several reasons for construing the "Modification Agreement" so as to exclude any privilege of re-assignment to avoid liability for not drilling the well. The first and paramount reason is there is no ambiguity in the contract terms, and no room for the application of the rule of looking beyond the instruments and to any circumstances other than those which ordinarily attend the execution of drilling contracts. There was no proof of circumstances in this case. The contracts themselves are explicit and furnish a complete guide for ascertaining the intention of the parties. Where this is so, the rule of solving ambiguities does not apply, either under the law of the state or upon general principles. Sternwear Tire & T. Co. v. Marion Tire & R. Co., 88 Okl. 117, 212 P. 134; American Bonding Co. v. Pueblo Investment Co. (C. C. A.) 150 F. 17, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357.

The "Modification Agreement" was specific in extending only the time to drill the well. The plaintiff might well have been willing to postpone that act, but not at all to accept a re-assignment of the lease. There was not only no postponement of the time to reassign, but no provision or time fixed for reassignment. Considering that the original agreement was otherwise in full force and effect, it did not authorize the option, as in terms it was to be exercised by April 1, 1929, and that time limit thereof had passed. And there is no escape from the conclusion that the option was not meant to be extended.

It may be true the intention of the Continental Oil Company was to contract for this privilege of reassignment. Their tenders indicate they had that theory of the "Modification Agreement." But why was the option not mentioned? A capable lawyer for the company drew the contract. And even if we assume the instrument to be ambiguous in this respect, the rule applies that the doubt be resolved against the party who drew it. Section 5057, C. O. S. 1921; Sac City Canning Co. v. Griffin Gro. Co., 99 Okl. 99, 225 P. 702. This is also the general rule. Sternberg v. Drainage Dist. (C. C. A.) 44 F.(2d) 560; Phoenix Ins. Co. v. Slaughter, 12 Wall. 404, 20 L. Ed. 444; Queen Ins. Co. v. Meyer Milling Co. (C. C. A.) 43 F.(2d) 885; Graham v. Business Men's Assurance Co. (C. C.

A.) 43 F.(2d) 673. Besides, the "Modification Agreement" was that "the commencement of a well shall constitute compliance with the original agreement," and this language excludes the idea that it might be complied with by a reassignment of the half interest in the lease.

We are clearly of the opinion an option to obtain a release by reassigning the lease cannot fairly be deduced from the second agreement. The plaintiff was entitled to recover damages for the failure to drill the well.

The cost of drilling a dry hole was stipulated to be $50,000. This sum represented the measure of damages the plaintiff was entitled to recover, as it had a direct interest in the well. Eysenbach v. Cardinal Pet. Co., 110 Okl. 12, 236 P. 10; Okmulgee P. & R. Co. v. Baugh, 111 Okl. 203, 239 P. 900; All-American Oil & Gas Co. v. Connellee (C. C. A.) 3 F.(2d) 107; Covington Oil Co. v. Jones (Tex. Civ. App.) 244 S. W. 287. There was no error in awarding that sum to the plaintiff.

The additional demand of the plaintiff for $12,000 was properly denied, as it was necessarily based on the theory that oil would be found in the well. By section 5976, C. O. S. 1921, the measure of damages recoverable for breach of contract is the compensation for the detriment proximately caused thereby, or what in the ordinary course of things would be likely to result therefrom. But the plaintiff had the burden of proof to establish its damages, and before it could be entitled to the value of a paying well, it was bound to prove that the well would have been of that character. There was no evidence to that effect, assuming the fact was susceptible of competent proof. There was no showing for a recovery beyond the $50,-000. A judgment for the additional claim of $12,000 was therefore properly refused.

The last question pertains to interest on the judgment. It was allowed from October 1, 1929, when the liability for the breach of the contract occurred. Interest was allowed only from date of judgment in Zurich Gen. Acc. & L. I. Co. v. Mid-Continent Petroleum Co. (C. C. A.) 43 F.(2d) 358, where liability appeared to be uncertain during the pendency of the suit. In Concordia Ins. Co. v. School Dist. (C. C. A.) 40 F.(2d) 379, where the suit was to recover insurance for fire losses, interest was allowed from date of liability. On appeal, the Supreme Court affirmed the judgment, 282 U. S. 545, 51 S. Ct. 275, 75 L. Ed. 528, holding that while a federal court should follow the decisions of the highest court of the state upon its statute, it was doubtful whether the later case of American Eagle Fire Ins. Co. v. Lively, 142 Okl. 246, 286 P. 797, settled the question of interest in a suit for fire insurance, and gave effect to the rule that in a case of unliquidated damages interest should be allowed from date of liability as an element of damages when necessary to arrive at fair compensation, in the exercise of sound discretion. The Lively Case preceded this case. However, as the Supreme Court held it was a doubtful precedent, we feel bound to follow the rule of the Concordia Case, and therefore hold that interest was properly allowed in this case from the date of liability.

Our consideration of the questions raised in this case leads us to conclude that the judgment of the District Court should be affirmed, both on the original and the cross appeal. It is so ordered.

Affirmed.