**In re Amelia L. ALLEN, Debtor.**

**COMMUNICATIONS WORKERS OF AMERICA, LOCAL 11500, AFL–CIO, Plaintiff,**

**v.**

**Amelia L. ALLEN, Debtor.**

**Bankruptcy No. LA 85–11052–RM. Adv. No. LA 85–4140–RM.**

United States Bankruptcy Court, C.D. California.

Jan. 8, 1987.

Douglas Booth, Los Angeles, Cal., for debtor.

Ellen Greenstone, Levy, Ansell, Goldman & Greenstone, Los Angeles, Cal., for Communications Workers of America, Local 11500, AFL–CIO.

## MEMORANDUM OF DECISION GRANTING DEBTOR'S MOTION FOR SUMMARY JUDGMENT.

LISA HILL FENNING, Bankruptcy Judge.

## INTRODUCTION

Debtor, Amelia Allen, is employed as a telephone operator by Pacific Telephone and Telegraph Company ("PacTel"). On August 1985, she crossed a picket line to continue working during a strike called by her Union, Local 11500 of the Communication Workers' of America, AFL–CIO (the "Union"). The Union fined her $3,009.12 for violating the Union's constitution and bylaws. Debtor filed a chapter 7 bankruptcy petition after the Union sued her in state court to collect its fine. The Union now seeks a determination that the fine is nondischargeable under 11 U.S.C. § 523(a)(6) as a debt "for willful and malicious injury by the debtor to another entity or the property of another entity."

This matter came on for hearing on the Union's motion for summary judgment. The parties stipulated at the hearing that Debtor's response could be deemed a cross-motion for summary judgment. After considering the declarations filed by the parties and the arguments of counsel, this Court finds that the material facts are undisputed. Although Debtor's action was intentional and breached her Union obligations, this Court concludes that her conduct did not constitute "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6). Therefore, this debt is fully dischargeable. The Union's summary judgment motion is denied; Debtor's summary judgment motion is hereby granted.

## FINDINGS OF FACT

The following facts are uncontroverted:

1. Plaintiff Union is a local affiliate of the Communication Workers of America, AFL–CIO ("CWA"). CWA has a collective bargaining relationship with PacTel, Debtor's employer.

2. Debtor's employment by PacTel was governed by a collective bargaining agreement between PacTel and CWA. Debtor was a member of the Union at all material times herein.

3. On August 7, 1983, CWA and the Union called a strike against PacTel, and set up a picket line against PacTel from that date through August 27, 1983.

4. During the August 1985 strike against PacTel, Debtor crossed the Union's picket lines to go to her job at PacTel. When she crossed the picket line without Union authorization, Debtor knew that it was important to the Union's bargaining strength that all workers stay out on strike, and knew that her strikebreaking, together with that of her co-workers, might impair the Union's bargaining position.

5. Article XIX, section 1 of the CWA Constitution provides that members may be fined, suspended or expelled by the Union or other local affiliates for (a) willfully violating the CWA's Constitution, Union Bylaws or Rules; (b) disobeying or willfully failing to comply with any lawful decision or order of the CWA or the Union; (c) and/or working without Union authorization during a properly approved strike at an establishment that is being struck by the CWA or its locals.

6. In accordance with the CWA Constitution and the Union's Bylaws, the Union filed charges against Debtor for crossing the Union's picket lines during the August 1985 strike. After an uncontested hearing before a Union court, Debtor was found guilty as charged; temporarily suspended from the Union; fined total amount of wages she earned for work during the strike ($2,909.12); and penalized $100 for her violation. Debtor did not appeal. Nor has she challenged either the Union's procedures or its right to impose a fine upon her under the circumstances.

7. On April 5, 1985, the Union instituted an action in Los Angeles Municipal Court to enforce and collect the penalty and fine assessed against Debtor. That action was stayed by the filing of Debtor's Chapter 7 petition on August 8, 1985. In her schedules filed in this proceeding, Debtor lists the debt of $3,009.12 to the Union as undisputed.

8. At the hearing on the summary judgment motion, the Union admitted that no strike funds were available to pay the living expenses of its members during the first three weeks of a strike, and only extremely limited funds might be available should the strike last longer than three weeks. The Union did offer to contact its members' creditors to attempt to defer payments for the duration of the strike, although that would not relieve Union members of their obligation to pay in full once the strike was over. The Debtor did not request such help.

9. At the time of the strike, Debtor's only source of income other than her job at PacTel was $160.00 per month in child support for her two minor children. Without a regular paycheck, she lacked the financial resources necessary to pay her rent and feed her children. Debtor crossed the picket line to earn the income necessary to pay for her family's immediate housing, food and other necessities.

10. During the hearing, counsel for the Union represented that approximately 490 of the Union's members were disciplined for crossing the picket line during this strike. The adverse effect on the Union's bargaining position from this strikebreaking activity was cumulative; no direct relationship between the actions of any individual Union member and the progress of the collective bargaining talks could be isolated or quantified.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this proceeding under 28 U.S.C. Section 1471.

2. The Constitution and Bylaws of CWA and the Union constitute an enforceable contract between the Union and Debtor under applicable labor statutes and case law.

3. Under applicable labor law, the Union is authorized to impose, enforce and collect fines under its constitution and by-laws against members who engage in strikebreaking, including crossing picket lines. The Union's power to discipline its members for strikebreaking is essential to its legal status as bargaining representative for employees.

4. Debtor's breach of her contract with the Union did not violate any federal or state laws. Nor did her conduct inflict "willful and malicious injury" on the Union or its property within the meaning of 11 U.S.C. § 523(a)(6).

5. The full amount of Debtor's debt to the Union is dischargeable under the Bankruptcy Code.

6. There are no genuine issues as to any material fact. Summary judgment is appropriate under the standards of Bankruptcy Rule 7056 and F.R.C.P. Rule 56.

## DISCUSSION

It is undisputed that Debtor intentionally crossed the picket line in violation of her contractual obligations to her Union, with the knowledge that her action would probably undercut the Union's bargaining position. It is also undisputed that Debtor's conduct was motivated by financial hardship, not by a desire to injure the Union in any manner.

Nevertheless, the Union argues that Union fines should be nondischargeable under Section 523(a)(6) of the Bankruptcy Code. If such fines are held to be dischargeable, the Union fears that its members would be thereby encouraged to cross picket lines with impunity, knowing that they may seek the safe harbor of bankruptcy to avoid paying Union fines. The Union urges that dischargeability would thus frustrate the strong public policy favoring collective bargaining.

The importance of collective bargaining is not disputed here. Nor has Debtor contested the Union's penalty. She accepted the Union's verdict and remains a dues-pay-

ing Union member. Rather, the issue is whether the Debtor's concededly "willful" conduct caused a "malicious injury" that warrants depriving her of the "fresh start" afforded by a discharge under the Bankruptcy Code.

Like all exceptions to discharge, the "willful and malicious" exception of Section 523(a)(6) is subject to the general rule that "the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor." 3 *Collier on Bankruptcy*, Sec. 523.05(A) (15 Ed.1985) ["Collier"]. *In re Cecchini*, 780 F.2d 1440 (9th Cir.1986), establishes the applicable standard for determining whether the criteria of Section 523(a)(6) have been satisfied:

> "When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent specific intent to injure." 780 F.2d at 1443.

The Union mis-cites *Cecchini* for the proposition that an intentional breach of contract—that is, a knowing failure or refusal to perform agreed obligations—is such "wrongful conduct." If the Union's analysis were correct, then the consequential damages arising from most breaches of contract would be nondischargeable in bankruptcy. Such a result was plainly not intended by Congress. The legislative history repeatedly emphasizes that Section 523(a)(6) deals with intentional torts, not contracts. *See Collier* § 523.16[1]; H.R. Rep. No. 95–595, 95th Cong. 1st Sess., 3 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 and Congr.Rec. 33,998.

In *Cecchini,* the relationship of the parties began with a contract, but the nondischargeable claim was for conversion of funds. That the Debtor's conduct may also have constituted a breach of contract was immaterial. It does *not* follow from *Cecchini* that any breach of contract is *ipso facto* nondischargeable. Dischargeability under Section 523(a)(6) turns upon the nature of the *act* giving rise to the liability and not upon the relationship of the parties. *Cf., In re Adams,* 761 F.2d 1422, 1427 (9th Cir.1985). Similarly, the nondis-

chargeable debt in *In re Friedenberg,* 12 B.R. 901 (Bankr.S.D.N.Y.1981), cited by the Union, also arose from conversion in a contractually created relationship.

Other cases cited by the Union establish that the tort of intentional interference with contractual relations can constitute "willful and malicious injury." *See, In re Kearney Chemicals, Inc.,* 468 F.Supp. 1107 (D.Del.1979); *In re Minsky,* 46 F.Supp. 104 (S.D.N.Y.1942). In these cases, the tortious conduct, however, not the resulting breach of contract, supported the nondischargeability result.

None of these cases held a breach of contract claim to be nondischargeable. The claims held nondischargeable were all intentional torts and inherently wrongful. By contrast, going to work across a picket line is neither tortious nor inherently wrongful conduct. Only Union members can be penalized for crossing picket lines. That penalty is based solely upon the terms of the members' contract with their Union.

That Union contracts are favored by federal labor policy does not transmute Debtor's breach of contract into "willful and malicious injury." The two cases cited by the Union involving violation of federal law are inapposite. Both concern direct, willful violations actionable under federal law. No such violation is even alleged here.

First, in *In re Gurda Farms, Inc.,* 15 B.R. 868 (S.D.N.Y.1981), the Debtor intentionally violated the certification requirements of the Farm Labor Contractor Registration Act. The resulting penalty was determined to be nondischargeable because the Debtor's violation jeopardized the health and safety of the migrant workers who were intended to be protected by the provisions of the Act. The second case, *In re Moore,* 1 B.R. 52 (Bankr.C.D.Cal.1979), concerned the debtor-landlord's intentional discrimination against black tenants by a pattern of refusal to make necessary repairs, coupled with unlawful evictions in violation of the National Housing Act of 1968. The tenants' claims for damages based upon their harassment and humiliation were held to be nondischargeable, due to the intentional, illegal and inherently

wrongful character of the Debtor's conduct.

Thus, debtors in *Gurda Farms* and *Moore* engaged in intentional conduct that caused significant injury to a protected class in direct violation of federal law. By contrast, this Debtor did not violate any federal law.

In summary, while Debtor's conduct here constituted a breach of her contractual obligations to her Union, it did not cause "willful and malicious injury" within the meaning of Section 523(a)(6). Neither the legislative history nor case precedent justify expanding this exception to include garden variety breaches of contract, even if the particular contract, as here, is favored as a matter of public policy. A foreseeable injury to the Union's bargaining strength may have resulted from Debtor's conduct, but it is not "malicious" in the sense that it warrants exception from discharge. *Cf., In re Haynes,* 19 B.R. 849, 9 B.C.D. 226 (Bankr. E.D.Mich.1982).