Douglas E. RODGERS, Jane B. Rodgers, Don C. Croka, and Jeanne Carpenter Croka, Appellants,

v.

TECUMSEH BANK, a banking corporation, Appellee.

No. 61928.

Supreme Court of Oklahoma.

April 5, 1988.

As Amended April 13, 1988.

Rehearing Denied July 6, 1988.

---

28. *Florida Power and Light Co. v. Westinghouse Elec. Corp.,* 597 F.Supp. 1456, 1479 (E.D.Va. 1984).

Lamun, Mock, Featherly, Baer and Timberlake by Barry D. Mock, Oklahoma City, for appellants.

Steven L. Parker, Tecumseh, for appellee.

DOOLIN, Chief Justice.

The primary issue presented by this appeal is whether this court should extend the implied-in-law duty of good faith and fair dealing, now imposed upon contracts of insurance, to contracts for commercial loans in order to support a cause of action for "tortious breach of contract." Other issues argued on appeal are the propriety of summary judgment and whether the facts support a cause of action for breath of the express terms of a written contract.

The facts of this case are as follows:

Douglas E. Rodgers, Jane B. Rodgers, Don C. Croka, and Jeanne Carpenter Croka (Borrowers) executed a promissory note and real estate mortgage with the Appellee Tecumseh Bank (Bank). The borrowers contend that the loan was for a two-year term and that a provision inserted in the printed real estate mortgage by the Bank's president and chief loan officer gives the borrowers a right to renew the loan. The disputed language provides:

> "*Final payment* may be refinanced at any time it is due without penalty and at terms no less favorable than original terms."

The bank alleges that the borrowers' loan was to be repaid in one year and that the bank made no agreement with the borrowers to extend the loan for more than one year. The bank claims that the above quoted clause was inserted in several loans by its former president to "induce customers to pay promptly so they could be considered for renewal if appropriate." The bank also contends that it informed the borrower, in ample time before final payment, that the bank would not consider a renewal or extension of the loan.

After paying the balance of their loan, the borrowers filed this action alleging breach of contract and "tortious breach of contract" against the bank. Both parties moved for summary judgment and the district court held these motions under advisement. Finally, at a pre-trial conference where the borrowers did not appear, the district judge granted the bank's motion

for summary judgment and dismissed the borrowers' causes of action.

Appeal followed.

## SUMMARY JUDGMENT

On a motion for summary judgment under District Court Rule 13 (12 O.S. Ch. 2, App.), all inferences and conclusions to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion. Where facts concerning any issue raised by the pleadings and materials are such that reasonable people, in the exercise of fair and impartial judgment, might reach different conclusions upon consideration of same, summary judgment must be denied.[1] On the other hand if there is no substantial controversy as to any material fact and one of the parties is entitled to judgment as a matter of law, the court shall render judgment to such party whether or not he is the movant. Rule 13, supra.

The following is our analysis of the various issues presented on motions for summary judgment.

## BREACH OF CONTRACT

■ Under Oklahoma law, contracts are to be construed most strongly against the party who prepared the form.[2] In construing any contract, we place primary significance on the intent of the parties at the time of contracting. When a note and a mortgage are prepared and executed at the same time, the two instruments should be read and construed together as one contract in determining the intent of the parties.[3] Typed or written insertions in a printed contract control over conflicting printed provisions in determining intent.[4]

Here, the bank's president and chief loan officer inserted the refinancing provision by adding his own words in the real estate mortgage, thereby making it an integral part of the agreement between the parties. Furthermore, an interpretation making a provision a useful and valid part of an agreement is preferred over a construction making the clause a nullity.[5]

We cannot accept the bank's interpretation that the provision was merely intended to encourage payment, because under the contract's modified terms the borrowers clearly had a legal duty to promptly repay the bank. We find the bank's arguments that it derived no benefit, that no independent consideration supported the option, and that the bank withdrew its offer before acceptance, are without merit, because the language was added to induce the borrowers to enter the contract. This Court will not diminish the borrowers' right clearly and specifically provided for in the contract.[6] Consequently, we find the trial court erred in dismissing borrowers' first cause of action for breach of contract. A contrary conclusion would necessitate this Court's rewriting the agreement between the parties and this we will not do.

On remand trial court is directed to enter partial summary adjudication in favor of the borrowers on the borrowers' claim for breach of contract, leaving only the amount of compensatory damages to be determined in the trial court.

## TORTIOUS BREACH OF CONTRACT

■ In their primary allegation of error, the borrowers urge the Court, principally on public policy grounds, to extend to this debtor-creditor relationship our holding in *Christian v. American Home Assurance*

1. *Ross v. City of Shawnee,* 683 P.2d 535 (Okl. 1984).

2. *Sac City Canning Co. v. Griffin Grocery Co.,* 99 Okl. 99, 225 P. 702 (1924); *Continental Federal Savings and Loan Association v. Fetter,* 564 P.2d 1013 (Okl.1977).

3. *Herrington v. Murphy,* 446 P.2d 595, 597 (Okl. 1968); *Bretch v. White,* 180 Okl. 69, 67 P.2d 945, 947 (1937).

4. *Davenport v. Doyle Petroleum Corp.,* 187 Okl. 40, 100 P.2d 445, 448 (1940); *Dooley v. Cordes,* 434 P.2d 289 (Okl.1967).

5. *Union Trust Company v. Shelby Downard Asphalt Co.,* 55 Okl. 251, 156 P. 903 (1916); *Amoco Production Company v. Lindley,* 609 P.2d 733 (Okl.1980).

6. *Rist v. Westhoma Oil Co.,* 385 P.2d 791 (Okl. 1963).

*Co.*[7] In that case, we stated, "an insurer has an implied duty to deal fairly and act in good faith with its insured and the violation of this duty gives rise to an action in tort for which consequential, and, in a proper case, punitive damages may be sought."

While *Christian* dealt with group disability insurance contracts, in *McCorkle v. Great Atlantic Insurance Co.*,[8] we extended the implied-in-law duty of good faith and fair dealing to include all types of insurance contracts. However, we refused to extend this duty to strangers to the contract in *Timmons v. Royal Globe Insurance Co.*,[9] and *Christian* and its progeny, thus far, only apply against insurers.

In the instant case, borrowers ask us to extend *Christian* to commercial loan agreements. We decline to do so because of the inherent differences between insurance policies and commercial loan agreements.

An insurance policy, by its very nature, is an adhesion contract,[10] which has been defined as follows:

> The term [adhesion contract] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a "take it or leave it" basis, without opportunity for bargaining and under such conditions that the "adherer" cannot obtain the desired product or service save by acquiescing in the form agreement.[11]

The definitive characteristic of an adhesion contract is the weaker party has no realistic choice as to its terms.[12]

The facts of the instant case belie that this commercial loan agreement was an adhesion contract. The borrowers shopped around and came to the bank because it offered the most favorable interest rates, and in negotiating the contract the borrowers were successful in having a favorable term inserted into the printed form. Here we have arms'-length negotiating, a relatively equal bargaining capacity and no snares or traps for the unwary, quite unlike the circumstances surrounding the issuance of an insurance policy.

Furthermore, the purpose of an insurance policy is elimination of risk, an aspect wholly absent in the contract now before us.[13] The authority we relied upon in *Christian* imposed the implied-in-law duty of good faith and fair dealing on the insurer because of the special purpose for obtaining insurance:

> An insurer has a special relationship to its insured and has special implied-in-law duties toward the insured. To some extent this special relationship and these special duties take cognizance of the great disparity in the economic situations and the bargaining abilities of the insurer and the insured. To some extent the special relationship and duties of the insurer exist in recognition of the fact that *the insured does not contract "... to obtain a commercial advantage but to protect [himself] against the risk of accidental losses ..."*[14] (citations omitted) (emphasis added)

The purpose of a commercial loan, on the other hand, is to provide the funds to facilitate the taking of a business risk. Where, as here, there is no special relationship, parties should be free to contract for any lawful purpose and upon such terms as

---

**7.**  577 P.2d 899, 904 (Okl.1977).

**8.**  637 P.2d 583, 588 (Okl.1981).

**9.**  653 P.2d 907 (Okl.1982).

**10.**  *Wilson v. Travelers Insurance Co.,* 605 P.2d 1327, 1329 (Okl.1980).

**11.**  *Steven v. Fidelity and Casualty Company of New York,* 58 Cal.2d 862, 882, 27 Cal.Rptr. 172, 185, 377 P.2d 284, 297 (1963).

**12.**  *Wheeler v. St. Joseph Hospital,* 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (1976).

**13.**  *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 ALR3d 286 (1970).

**14.**  *Fletcher, supra* 89 Cal.Rptr. at 95.

they believe to be in their mutual interest.[15] To impose tort liability on a bank for every breach of contract would only serve to chill commercial transactions. This is not to say that under every fact situation arising from a breach of contract that recovery may never lie. Gross recklessness or wanton negligence on behalf of a party to a contract may call for an application of the theory of tortious breach of contract.

Lastly, in *Christian* we found a pre-existing statutory duty imposed upon insurers to make immediate payment of claims. Further, commercial transactions under 12A O.S.1981, § 1–203 carry an obligation of good faith in their performance and enforcement Likewise, under the common law each contract carries an implicit and mutual covenant to act towards each other in good faith.[16]

The duty alleged in the borrowers' alternative theory of recovery for tortious breach arises solely from contract. Without an independent basis to support a tortious wrongdoing, there is nothing more than an alleged breach of that contract. Therefore, we find no merit in the borrowers' theory of recovery as pled as a second cause of action and we affirm the court's order dismissing it.

The order of the trial court is REVERSED in part, AFFIRMED in part, and the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion.

DOOLIN, C.J., HARGRAVE, V.C.J., and SIMMS, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

HODGES and KAUGER, JJ., concur in result.

---

**15.** *Hall v. Farmers Insurance Exchange,* 713 P.2d 1027 (Okl.1985).

**16.** *Hall, supra* at 1029.