In re Jerry Lynn **COLCLAZIER**, Debtor.

Joseph **PALAZZOLO**, Plaintiff,

v.

Jerry Lynn **COLCLAZIER**, Defendant.

**Bankruptcy No. 90–06374–BH.**
**Adv. No. 90–0339.**

United States Bankruptcy Court,
W.D. Oklahoma.

Nov. 14, 1991.

Paul E. Quigley, of Derryberry, Quigley, Parrish, Solomon & Blankenship, Oklahoma City, Okl. for plaintiff.

Jerome Sepkowitz, Oklahoma City, Okl., for debtor/defendant.

## MEMORANDUM OF DECISION

RICHARD L. BOHANON, Chief Judge.

Mr. Palazzolo, a former tenant of Mr. Colclazier, seeks a determination that an Oklahoma state district court judgment, entered in his favor against Mr. Colclazier, is nondischargeable in Mr. Colclazier's current Chapter 7 case, pursuant to 11 U.S.C. § 523(a)(6). He contends the judgment was based on a willful and malicious injury to his property. Mr. Palazzolo moved for summary judgment on the basis that the state court action was *res judicata* on the issue of Mr. Colclazier's willful and malicious intent. This court denied the motion for summary judgment, after a review of the trial transcript and jury instructions, finding that the jury had awarded the judgment based upon a reckless disregard test.

The Court then tried the complaint. After reviewing the briefs of the parties, the state trial court transcript and jury instructions, and hearing oral argument the court holds that the judgment at issue is dischargeable and enters this memorandum.

## FINDINGS OF FACT

Mr. Palazzolo had been involved in various aspects of the real estate development business in Oklahoma City. In the spring of 1986, he subleased space in a commercial

building in Oklahoma City in which he operated a meeting and banquet facility and also a "teenage nightclub." Mr. Palazzolo had been looking for a building to purchase to use for the same purposes, when he was notified that he was losing his lease on the building he then occupied. Mr. Palazzolo had been considering the purchase of a building which was under lease to Mr. Colclazier, but apparently was having trouble obtaining financing.

Mr. Palazzolo then approached Mr. Colclazier seeking a sublease of the unused portion of the building. Mr. Colclazier was familiar with the banquet facility operated by Mr. Palazzolo and was interested in dealing with Mr. Palazzolo because of that facility's good reputation. In addition, it appears that the parties discussed some type of joint effort involving obtaining financing for purchase of the building.

The parties met several times in August of 1986 to discuss purchase and development strategies and to negotiate a sublease. At some point a draft lease was prepared by Mr. Colclazier's attorney. On August 29, 1986 the parties met to review the draft lease. At that meeting Mr. Palazzolo and his attorney suggested that several modifications would be necessary before the lease would be satisfactory to them. Evidently, some type of representations were made that the lease transaction could be concluded in a short time frame. Also at this meeting, Mr. Palazzolo apparently indicated that time was of the essence as he had lost his previous lease and needed to begin improving the area to be subleased from Mr. Colclazier. At this point, although the parties were still negotiating for a sublease, Mr. Colclazier agreed to allow Mr. Palazzolo to take possession of half the building to begin improvements.

Over the course of the following three weeks, Mr. Palazzolo improved the property and began operation of a "teenage nightclub". Mr. Colclazier was surprised by this type of operation, evidently expecting a banquet facility, and because of this unexpected use he requested, almost daily, that Mr. Palazzolo sign the lease.

Lease negotiations broke down at the end of three weeks. Mr. Colclazier, upon the advice of his attorney, turned off the utilities in the building and barred entry to the building by Mr. Palazzolo. Mr. Palazzolo then sued in Oklahoma state court for breach of contract, deceit or bad faith, and conversion of his personal property. In his pleadings, Mr. Palazzolo requested exemplary damages of $50,000 for deceit and $55,614 in lost net profits for breach of contract.

After a lengthy trial before a jury, Mr. Palazzolo was awarded a judgment of $40,510.86 for breach of contract and $10,000 in exemplary damages against Mr. Colclazier. The jury instructions included the elements, under Oklahoma law, of only two causes of action: contract and deceit. In these instructions the intent element of the deceit cause of action was given as a knowing or reckless disregard standard. In addition, the instructions included the nature of damages for these two causes of action. The jury was told that if it found Mr. Colclazier liable for a breach of contract that it should award damages for lost net profits. The jury was also instructed that it could award exemplary damages of up to $50,000 if it found that the elements of deceit were present in Mr. Colclazier's actions.

## CONCLUSIONS OF LAW

Plaintiff first contends that the $10,000 exemplary award under the judgment is nondischargeable pursuant to § 523(a)(6) because defendant willfully and maliciously deceived him, never intending to enter into a written lease, and his property rights under the lease were therefore harmed. Mr. Colclazier contends that he never intended to deceive Mr. Palazzolo.

Mr. Palazzolo poses two arguments in furtherance of his second claim that the judgment rendered for breach of contract is nondischargeable. First, he argues that the judgment is nondischargeable, pursuant to § 523(a)(6), because a contract right is a property interest and his property interest was injured when the lease was intentionally breached and an intentional

breach is per se willful and malicious. Alternatively, he argues that a bad faith breach of contract is an independent tort under Oklahoma law and the injuries from this tortious conduct are nondischargeable pursuant to § 523(a)(6).

Mr. Colclazier contends that Mr. Palazzolo was merely a tenant at will for only so long as lease negotiations were ongoing. He argues that his breach of this landlord tenant relationship was a business judgment and was not made with any willful and malicious intent.

## DISCUSSION

Plaintiff's arguments require us to first determine the nature of the damages he suffered. The judgment at issue does not specify the underlying cause of action from which the damages awarded arose. It is clear though, from the jury instructions, that the damages arose from two sources, deceit and breach of contract. The jury instructions also indicate that the $10,000 award flows from liability for deceit and the $40,510.86 award flows from liability for breach of contract. Because these awards so clearly arise from different causes of action we will separately address the question of their dischargeability.

■ Section 523(a)(6) states that any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. Mr. Palazzolo must therefore show by a preponderance of the evidence that Mr. Colclazier willfully and maliciously deceived him. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For Mr. Colclazier's actions to be "willful", he must have acted intentionally and deliberately. *In re Compos,* 768 F.2d 1155, 1158 (10th Cir.1985). Malicious intent can be shown by direct evidence of specific intent or indirect evidence that the actor knew he was violating another's right. *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989).

Neither the state court trial transcript nor the testimony at the hearing before this court indicate any willful and malicious deception on the part of Mr. Colclazier. The evidence shows the opposite, that Mr.

Colclazier hired an attorney to draft lease documents, met with Mr. Palazzolo several times to negotiate lease terms, and through an employee repeatedly asked Mr. Palazzolo to execute a lease. If Mr. Colclazier was intending to maliciously deceive Mr. Palazzolo he could have done so with less trouble and expense. The jury awarded $10,000 to Mr. Palazzolo for deceit, but this award is at best based on reckless actions by Mr. Colclazier and not any willful and malicious intent on his part.

■ Next, it appears that the questions posed by plaintiff toward his second argument, whether an intentional breach of contract is either per se willful and malicious or can rise to the level of a willful and malicious tort under § 523(a)(6), are matters of first impression in this district. Ordinarily § 523(a)(6) is applied to debts arising from tortious conduct. The few courts which have been faced with a request to except a breach of contract claim from discharge have been wary of applying tort standards of conduct to contracts, where conduct is the result of a bargained for exchange.

When interpreting and applying any particular provision of the Bankruptcy Code this court is guided and bound in the exercise of its authority to effect any remedy by the policies underlying both the Code and that particular provision. One of the fundamental policies of the Bankruptcy Code is the fresh start afforded the debtor through the discharge of the debtor's debts. Under this policy, the discharge is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). The exceptions to discharge, including § 523(a)(6), serve to limit the discharge to those of the "honest debtor". *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). In order to effectuate the fresh start policy, exceptions to discharge are limited and "should be strictly construed against an objecting creditor and in favor of the debt-

or's right of discharge." *In re Vickers*, 577 F.2d 683, 686 (10th Cir.1978).

Against this background, plaintiff is asking this court to broaden the reach of § 523(a)(6) beyond injuries from tortious conduct to include damage awards for intentional breaches of contract. For several reasons, it is difficult for this court to stretch § 523(a)(6) so far. First, applying § 523(a)(6) to contract causes of action is difficult in light of the longstanding application of § 523(a)(6) solely to tort causes of action. *See Collier on Bankruptcy* ¶ 523.-16[1] (L. King 15th ed. 1991); *In re Haynes*, 19 B.R. 849, 850 (Bankr.S.D.Mich. 1982). Second, there are indications in the legislative history that this exception is directed only toward tortious conduct on the part of the debtor. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 3, reprinted in 1978 *U.S.Code Cong. & Admin.News*, 5787; *In re Allen*, 75 B.R. 742, 745 (Bankr. C.D.Cal.1987); *In re Moultrie*, 51 B.R. 368, 373 (Bankr.D.Wash.1985). It is obvious, from a review of the decisions of those courts which have excepted from discharge damages from injuries arising from the breach of a contract, that they have done so only upon finding an independent, willful tort. *See Haynes, supra*, 19 B.R. at 851; *Allen, supra; In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986); *In re Hartman*, 100 B.R. 46 (D.Kan.1989); *In re Mills*, 111 B.R. 186 (Bankr.N.D.Ind.1988).

Finally, this court finds it difficult to apply § 523(a)(6) to intentional breaches of contract because to do so would afford a remedy inconsistent with the manner in which contracts are dealt with in the Bankruptcy Code. In particular, it would be inconsistent to penalize intentional breaches of contract resulting from the exercise of business judgment when § 365(a) of the Bankruptcy Code allows contracts to be breached for business judgment reasons. *See In re Haynes*, 19 B.R. 849, 852 (Bankr. S.D.Mich.1982). For these reasons we find that § 523(a)(6) exempts from discharge only damages from tortious breaches of contract.

■ Plaintiff next argues that a breach of contract can rise to an independent tortious action. Plaintiff contends that duties arise from the contractual relationship other than those expressed in the contract itself, such as the duties of doctors and attorneys to their clients.

Plaintiff is correct that some actions under a contract can be tortious, but the actions of the parties under the contract in this case are not tortious under Oklahoma law. In Oklahoma, some acts of a party which effectuate a breach of contract, such as professional malpractice are "independent, willful torts." *See Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 565 (10th Cir.1989), citing *Z.D. Howard Co. v. Cartwright*, 537 P.2d 345, 347 (Okla.1975) and *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023, 1027 (Okla. Ct.App.1983). The courts in the cases cited found that the formation of some contracts form two sets of duties, the bargained for duties between the parties in the contract and duties imposed by law on the parties related to the type of service, property, or product involved in the contract. *Z.D. Howard Co. v. Cartwright*, 537 P.2d 345, 347 (Okla.1975).

In particular, the Oklahoma courts have found duties imposed by law to exist, outside of the malpractice context, in four circumstances: when bailor-bailee relationships are present such as in *Woods Petroleum;* when defective or deceased products are sold such as in *Z.D. Howard Co.;* when necessary services such as gas and electricity are involved such as in *Oklahoma Natural Gas v. Pack*, 186 Okl. 330, 97 P.2d 768 (1939); and when employer/employee or agency/principal relationships exist such as in *Hall v. Farmers Ins. Exch.*, 713 P.2d 1027, 1029 (Okla.1985).

None of these relationships giving rise to duties imposed by law are present in the agreement between the parties in the case before this court. Therefore no tort could have been committed in the case because there is no legal duty violated.

■ Plaintiff further argues that bad faith or malicious breaches of any contract, in violation of the duty of good faith inherent in all contracts, is itself a tort notwith-

**34**

standing the absence of a special relationship or duty at law.

The Oklahoma Supreme Court has twice rejected this argument. *See Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla.1988) and *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla.1989), and *see RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813 P.2d 1 (Okla.App.1990). In the Oklahoma Supreme Court case cited, the court has required that a separate duty at law of good faith and fair dealing necessary for protection of the public must be present, beyond the contractual duties, for tortious conduct to be possible. *Rodgers*, 756 P.2d at 1226; *Burk*, 770 P.2d at 28.

The Oklahoma Supreme Court had ample opportunity, in *Rodgers* and *Burk*, to find a duty at law of good faith and fair dealing in any contract, but refused to do so. The court in *Rodgers* based this decision on the chilling effect such a duty might have on commercial transactions. *Rodgers*, 756 P.2d at 1227. At this time, the Oklahoma Supreme Court has extended a duty at law of good faith and fair dealing in only two situations in which it found protection for the public necessary: employment contracts, via the decisions in *Hall v. Farmers Ins. Exch.*, 713 P.2d 1027 (Okla.1985) and *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), and contracts of insurance, via *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977). Oklahoma courts have refused to extend such a duty to other commercial contracts. *See Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla.1988) (commercial lending contract); *RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813 P.2d 1 (Okla.App.1990) (take or pay gas contracts).

## DECISION

We find that the $10,000 exemplary award under the judgment is not exempt from discharge pursuant to § 523(a)(6) because plaintiff did not prove by a preponderance of the evidence that defendant's actions were willful and malicious. In addition, we find that under Oklahoma law a bad faith breach of a commercial lease

agreement is not tortious conduct. Because we find that § 523(a)(6) applies to injuries from tortious conduct and an intentional bad faith breach of contract is not an independent tort under Oklahoma law, the judgment awarded for damages of $40,-510.86 arising from a bad faith breach of contract is not covered by the exception to discharge in § 523(a)(6).

Accordingly, it is ordered that the Oklahoma state court judgment rendered on June 23, 1987 and entered in favor of Mr. Palazzolo on September 8, 1987 is discharged pursuant to § 727(a), and an appropriate judgment will be entered.