**RJB GAS PIPELINE COMPANY,**
Appellee/Counter–Appellant,

v.

**COLORADO INTERSTATE GAS COM-
PANY, Appellant/Counter–Appellee.**

No. 69148.

Court of Appeals of Oklahoma,
Division No. 3.

Dec. 19, 1989.

As modified on Denial of Rehearings
March 6, 1990.

Certiorari Denied June 5, 1990
for R.J.B. Gas.

Certiorari Dismissed June 17, 1991
for Colorado Interstate Gas.

Hank B. Watson, Jr., Oklahoma City, for appellant/counter-appellee.

Stanley L. Cunningham, Oklahoma City, for appellee/counter-appellant.

HANSEN, Presiding Judge:

This case involves claims brought by RJB Gas Pipeline Company (RJB) against Colorado Interstate Gas Company (CIG) for breach of the provisions of four gas purchase agreements under which RJB gathers and sells, and CIG purchases natural gas.

The gas is sold under four contracts designated as Nos. 535, 669, 704, and 840. The contracts have four principal provisions:

1. For the gas itself, CIG agrees to pay the highest price in eastern Colorado, or the applicable price established by the Federal Energy Regulatory Commission (the FERC), whichever is greater;

2. For gathering, CIG agrees to pay $.20 per Mcf or any higher price prescribed by the FERC;

3. CIG agrees to take, or pay for if not taken, a certain minimum "Contract Quantity" of gas per year; and

4. If CIG pays for the deficiency between the Contract Quantity and any lesser quantity of gas actually taken, it can make up the deficiency payment by taking free gas within the ensuing five years.

In April, 1984, RJB brought suit seeking actual and punitive damages for CIG's alleged failure to pay a gathering fee as set forth in the four contracts. RJB amended its petition to assert additional claims that CIG had breached the take-or-pay provisions of contracts # 535, 669 and 704. RJB also sought punitive damages for alleged tortious conduct on the part of CIG in failing to make the take-or-pay payments.

CIG answered denying any liability for payment of the gathering fee based on certain orders of the FERC. It defended the take or pay action by claiming the contract allowed recoupment.

The court entered partial summary judgment as to liability for RJB on its gathering claim. The case proceeded to trial on the gathering damages, take-or-pay, and punitive damage claims. At the end of the evidence, the court directed a verdict for RJB on the gathering claims in the amount of $2,291,397.67. At the close of RJB's case-in-chief it sustained CIG's demurrer to the evidence on both punitive damage claims and overruled it in all other respects. Further, it directed a verdict as to liability on the take-or-pay claims and sub-

mitted the issue of damages to the jury. The jury returned a verdict for RJB in the amount of $3,252,651.08 regarding the take-or-pay claims.

The court entered judgment on the jury verdict and ruled RJB was entitled to $729,-432.09 in prejudgment interest on the gathering claims and $319,371.75 on the take-or-pay claims. The court further ruled as a matter of law that upon payment of the take-or-pay deficiencies assessed by the jury, CIG was not entitled to recoup any of the gas for which it was assessed damages. The court also awarded RJB $485,492.00 in attorney fees.

CIG appeals the gathering fee judgment and the judgment rendered on the jury verdict in the take-or-pay claim. It also appeals the order granting pre-judgment interest to RJB on both claims, and the attorney fee award. RJB counter-appeals the trial court's sustention of CIG's demurrer to RJB's evidence in support of its tort claims and prayer for punitive damages.

## I. THE GATHERING FEE ISSUE

CIG is an interstate natural gas pipeline and is regulated by the FERC. When originally executed, three of the contracts were solely intrastate contracts, i.e., the gas was purchased and sold exclusively within the state of Colorado. Article VII, Section 7.2 of Contracts 535, 669 and 704 restricts CIG from transporting gas outside the state of Colorado. Contract 840 contains no such restriction. However, both parties agree that all contracts are existing intrastate contracts. Article VII, Section 7.1 of the contracts subjects the parties and the agreement to "present and future valid laws and valid orders, rules and regulations of duly constituted authorities having jurisdiction or control over the parties, their facilities or gas supply or this Agreement or any provision thereof ..."

On November 9, 1978, Congress passed the Natural Gas Policy Act of 1978 (NGPA), which set certain maximum lawful ceiling prices for sales of natural gas, including gas previously sold under intra-state contracts. Section 105 of the NGPA provided the maximum lawful price for the sale of natural gas would be the lower of the price under the terms of the contracts in existence on the date of NGPA enactment, or the maximum lawful price, per million Btu's, (MMBtu's) computed for such month under § 3312 of the NGPA (relating to new natural gas).

Section 110 of the NGPA provided for the collection of certain costs, in addition to the maximum lawful price, as reimbursement for "production-related costs" such as gathering, delivering, compressing and conditioning gas for sale. The NGPA gave the FERC the responsibility for promulgating regulations setting forth what costs could be collected in addition to the maximum lawful price of the gas.

The intial FERC regulations implementing § 110 established the total price, including production-related costs for gas priced under NGPA § 105(b)(1) could not exceed the NGPA § 102 ceiling price of $2.06/Mcf. If, upon enactment of the NGPA, the price paid under the intrastate contract escalated to the NGPA § 102 level, no additional production-related costs could be lawfully paid by the purchaser.[1] Production-related costs, such as gathering, could only be recovered in addition to the § 102 price by a showing of special hardship.

FERC issued Order 94-A effective March 7, 1983. That order provided for a rate for gathering of $.51 per MMBtu. FERC issued two other rule-making orders which RJB claims confirmed it could collect the minimum $.20/Mcf contained in the contract. These orders Order No. 68-A issued November 10, 1980 and Order No. 94-B also effective March 7, 1983.

CIG claims that because RJB's price for gas escalated to the § 102 price effective March 1, 1979, CIG could not lawfully pay the $.20/Mcf gathering fee provided in the contracts without exceeding and violating the maximum lawful price established by the FERC regulations.

On November 28, 1979, RJB applied to the FERC for an adjustment on the basis

---

**1.** Section 102 deals with the ceiling price of new natural gas.

of special hardship. At Docket No. SA 80–40, RJB sought to have its sales to CIG declared not subject to the NGPA, or, alternatively, for an adjustment on the grounds of special hardship. RJB sought $1.214/Mcf gathering costs based on its alleged actual cost of service.

On December 19, 1979, the FERC entered an Interim Order holding the RJB's sales of gas to CIG were subject to FERC jurisdiction under the NGPA and that RJB was entitled to receive interim relief in the amount of $.20/Mcf gathering costs pending a final determination.

On June 25, 1980, the FERC reversed its interim order and entered a second one finding that RJB had not demonstrated special hardship, was not entitled to any relief for a gas gathering fee above the maximum lawful price, and RJB was required to refund the $.20/Mcf it was allowed to receive on an interim basis.

On May 7, 1981, the FERC issued a third order affirming the prior findings, with the exception that the order provided RJB had demonstrated a special hardship and was entitled to $.101/Mcf above the § 102 ceiling price for gathering. RJB appealed the ruling to the next decisional level at the FERC.

In the meantime, on April 9, 1984, RJB filed this lawsuit against CIG for damages for breach of contract, seeking $.20/Mcf until March 7, 1983, the effective date of order 94–B, and $.51 MMBtu thereafter, pursuant to order 94–A. CIG answered claiming, *inter alia*, that orders issued by the FERC constituted an affirmative defense to collection of gathering fees.

On July 9, 1984, the FERC issued its final order [2] affirming the May 7, 1981 order, but increasing the level of adjustment to $.1359/Mcf effective November 28, 1979. The order also provided RJB was not entitled to collect $.20/Mcf for gathering in addition to the maximum lawful ceiling price of the gas.

It further ordered RJB to refund to CIG the difference between the $.20/Mcf paid pursuant to the December 19, 1979 interim order and the $.1359/Mcf provided for in the July 9, 1984 order. This final order was without prejudice to RJB's ability to seek gathering costs authorized by the contracts under the FERC's final rules, after March 7, 1983.

## A. Jurisdiction

CIG argues the trial court erred in finding RJB was entitled to the gathering fee as a matter of law. A threshold issue raised by CIG on appeal is whether the trial court had any jurisdiction at all to hear RJB's claim for the gathering fee, arguing the FERC, as the federal regulatory body for the sale of natural gas, has exclusive jurisdiction to decide this claim. CIG presented this exact argument to the Oklahoma Supreme Court in Case No. 66,-578 (*Colorado Interstate Gas Company v. The District Court of Oklahoma County, Seventh Judicial District, Oklahoma and the Honorable William H. Henderson, District Judge Thereof*), wherein it urged the Supreme Court to issue a writ prohibiting the trial court from proceeding further on grounds of federal primary jurisdiction, administrative res judicata and collateral estoppel. The Court declined to assume jurisdiction to address this issue. Thus, it is now before this Court on CIG's direct appeal.

■ In support of its argument, CIG cites this Court to *Arkansas Louisiana Gas Company v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981). In *Hall*, natural gas producers brought state court action against a buyer contending that buyer's payments under leases it had purchased in the same producing field triggered the favored nations clause of the purchase agreement, which had been filed with and approved by the Federal Power Commission. The U.S. Supreme Court held the state court's award of damages was barred by the filed rate doctrine. "Under

---

2. Although RJB filed a Petition for Review of FERC's July 9, 1984 decision to the 10th Circuit Court of Appeals, RJB dismissed its appeal.

the filed rate doctrine, the Commission alone is empowered to approve the higher rate respondents might have filed with it, and until it has done so, no rate other than the one on file may be charged. The court below thus has usurped a function that Congress has assigned to a federal regulatory body." Although pursuant to the Natural Gas Act of 1938, 15 U.S.C. § 717 *et seq.*, a seller for resale in interstate commerce is required to file its rates with the FERC, there is no such requirement for intrastate gas under § 105 of the NGPA. Sellers under existing intrastate contracts may collect their contract rate, without the necessity of any filings with the FERC. There has been no usurpation of a function assigned to the FERC in the instant case. *Arkansas Louisiana Gas Company v. Hall* is inapposite.

On the other hand, the U.S. Supreme Court in *Pan American Petro. Corp. v. Superior Court of Del.*, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) held " . . . questions of exclusive federal jurisdiction and ouster of jurisdiction of state courts are, under existing jurisdictional legislation, not determined by ultimate substantive issues of federal law. The answers depend on the particular claims a suitor makes in a state court—on how he casts his action."

■ The instant action like the action in *Pan Am* is based upon contract claims arising under state, not federal law. The rights asserted by RJB are traditional common-law contract claims. "They do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas." The nature of the claim is determined from the face of the petition. " . . . it is no substitute that the defendant is almost certain to raise a federal defense." *Pan American Petro. Corp. v. Superior Court of Del., supra.* The trial court has jurisdiction to hear the gathering fee issue under the involved contracts.

■ Next, CIG contends the judgment should be vacated under the doctrine of primary jurisdiction. This contention is without merit. The function of the doctrine of primary jurisdiction is to guide a court in determining whether it should refrain from exercising its jurisdiction until after an administrative agency has determined some question or some aspect of some question arising in the judicial proceeding. *Palermo v. Bell Tel. Co. of Pennsylvania*, 415 F.2d 298 (3rd Cir.1969). Although courts may at times defer a decision in an area of the law in which a governmental agency exercises a particular expertise, in the instant case, there is no matter the trial court could have deferred. The FERC had already set the rates for gathering.

### B. Conflict with the FERC orders

The FERC has jurisdiction to issue orders regulating prices for natural gas in the United States. The NGPA fully encompasses the area of production-related costs. Contracts in this area generally recognize this jurisdiction and set costs accordingly.

The above orders deal with gathering costs for two periods, The period prior to March 7, 1983 and the period after March 7, 1983.

### 1. Fees prior to March 7, 1983

CIG asserts the FERC regulations under the NGPA are a defense to its paying $.20/Mcf and argues the trial court's ruling regarding the gathering claim directly conflicts with the FERC's order in Docket SA 80–40 and the FERC's regulations. Article VII, Section 7.1 of the contracts subjects the parties and the agreement "to present and future valid laws and valid orders, rules and regulations of duly constituted authorities having jurisdiction or control over the parties, their facilities or gas supply or this Agreement or any provision thereof. . . ." This requires the trial court to base its ruling on the orders of the FERC.

The contracts provided CIG would pay $.20 /Mcf or any *higher* price prescribed by the FERC. For this period, the FERC did not prescribe a higher price. In fact, it allowed only $.1359/Mcf to be added to the

cost of gas for gathering based on RJB's showing of special hardship. Thus, RJB argues, under the contract it is still entitled to $.20/Mcf, regardless of any FERC orders to the contrary.

In addition, RJB insists the FERC Order 68–A clearly allows producers to collect whatever rate the contracts provided on the date of the enactment of the NGPA. We do not agree.

Specifically, CIG notes the trial court awarded RJB $0.20/Mcf for the period prior to March 7, 1983, whereas the FERC determined RJB could not lawfully collect any gathering fee in excess of the NGPA § 102 price without a showing of special hardship. The FERC granted a special adjustment for $0.1359/Mcf. RJB argues the FERC changed its regulations to permit a producer under a § 105 contract to amend its contract to achieve a higher gathering rate in the circumstance where the existing contract did not say that the producer was required to pay the production-related costs. Although this situation is not applicable to RJB because its contracts expressly provide the purchaser, CIG, had to pay these costs, RJB contends that in discussing that issue the FERC focused on RJB's situation:

> The amendments in subpart E and F [dealing with existing intrastate contracts under § 105] prohibit only the shifting of production-related costs that were allocated to the seller under the existing intrastate contract as it existed on November 9, 1978. The regulations never prohibited a purchaser from incurring any costs the seller had no obligation to bear under the existing contract, and they no longer prohibit seller from applying for an allowance for production related costs that were not allocated to the seller under the existing intrastate contract. FERC Order No. 68–A.

However, the FERC specifically rejected RJB's attempted use of Order 68–A as justification for the $.20/Mcf fee. In its Order Denying Rehearing of the July 9, 1984 order the FERC stated:

The specific language of Section 271.-1104(b) on which RJB relies should be interpreted in order to accomplish the purpose which the Commission intended in Order No. 68–A. This can be done if, for purposes of Section 271.1104(b) as in effect before March 7, 1983, production-related costs are considered to be allocated to the seller under the existing contract when the seller has bound itself to incur the costs in order to perform a service even though the contract provides for later reimbursement by the purchaser. This is consistent with Order No. 68–A's treatment of the seller as bearing or incurring the costs of services it performs under the contract for which it later receives compensation. Accordingly, production-related costs not allocated to the seller under the existing contract for purposes of Section 271.-1104(b) must be those for services which the existing contract did not require the seller to perform. These latter costs were the only production-related costs Section 271.1104(b) permitted a seller of section 105 gas to recover through an add-on to the maximum lawful price. Since the costs RJB seeks to recover are costs for services its existing contracts required it to perform, Section 271.-1104(b) prohibited it from recovering those costs through production-related cost allowances pursuant to Section 271.-1104(c) or (d).

Specifically, FERC found the costs recoverable were only for new costs for services the existing contract did not require seller to perform. Because the costs sought by RJB were for services its existing contracts required it to perform, the regulations did not permit recovery of production-related costs in addition to the NGPA § 102 price.

■ Thus, based on the Order Denying Rehearing and on Article VII of the contracts, the trial court erred in awarding $0.20/Mcf for the period prior to March 7, 1983. We therefore, reverse and remand with directions to set damages according to the FERC order allowing $0.1359/Mcf.

### 2. Fees from March 7, 1983 until Judgment

CIG urges the trial court erred by applying the wrong regulation to calculate the $.51 per MMBtu awarded to RJB for the post-March 7, 1983 period. The FERC issued Order No. 94–B, effective March 7, 1983, which dealt with:

(d) Amounts necessary to recover production related costs ...

(2) An amount necessary to recover a production related cost borne by the seller for delivering natural gas to any interstate pipeline, intrastate pipeline, local distribution company or any person for the use by such person by delivery systems, the construction of which commenced prior to November 9, 1978, for sales having an applicable maximum lawful price determined under subparts E and F [having to do with the § 105 contracts] shall *not exceed the amount that the seller is expressly authorized to collect under the terms of the contract* for the recovery of the cost in accordance with paragraph (c)(4)(ii)(A) of this section; ... (emphasis supplied). Order No. 94–B.

CIG admits RJB is entitled to collect $0.20/Mcf under Order 94–B for this period. However, CIG contends RJB is not entitled to the higher rate of $.51 per MMBtu provided by Order 94–A. Order 94–B requires the seller be "expressly authorized" to collect the rate under the terms of the contract. RJB notes Order 94–A defined the term "expressly authorized" to mean:

A contract provision expressing an amount, or a method of determining an amount, that the purchaser agrees to pay the seller for providing the specified service. Order 94–A.

RJB states the provision in its contracts provides for "a method of determining an amount" within the foregoing definition, i.e., "any higher rate prescribed by the FERC." It insists the issue is whether the provision of RJB's contracts obligating CIG to pay "any higher price" was invoked by Order 94–A. It concludes the contract provision would be invoked by the highest rate provided by the FERC's regulations, regardless of whether that rate was "applicable" to the vintage of gathering system involved. RJB observes Order 94–A provides a higher rate for gathering systems, the construction of which commenced on or after November 9, 1978. It admits its gathering system was commenced before that date, but asserts that pursuant to the contracts, the rate does not have to be "applicable," but only the "highest" rate provided by the FERC's regulations. Order 94–A provides for a higher rate.

We do not agree with RJB's contentions. Its interpretation of the contracts would allow it to collect gathering fees in excess of those permitted by the regulations, and its interpretation would entitle it to the highest "inapplicable" price prescribed by the FERC, not the highest "applicable" price. The trial court erred in utilizing Order 94–A in awarding RJB $.51 per MMbtu for the post–March 7, 1983 period.

## II. THE TAKE–OR–PAY ISSUE

RJB sought actual and punitive damages for the alleged breach of the take-or-pay provisions of Contracts 535, 669 and 704. It asserted no take-or-pay claims under Contract 840. Under the take-or-pay provisions of the contracts, CIG is required to take, or, failing to do so, pay for a minimum quantity of gas (known as contract quantity) from each well, each year. The contracts also provide for recoupment or make-up of take-or-pay payments out of production in excess of contract quantity in the five years subsequent to a deficiency. At the close of CIG's evidence, the trial court directed a verdict for RJB as to liability on the take-or-pay claims.

CIG claims a new trial on the take-or-pay claims should be granted because CIG was substantially prejudiced by the trial court's erroneous handling of the gathering and punitive damage claims. First, CIG urges the jury should never have heard RJB's claims for actual and punitive damages on the gathering issue. CIG offered, prior to trial, to stipulate to the gathering damages to remove the issue from the jury's consideration. However,

an agreement could not be reached because RJB wanted to put on evidence of CIG's alleged refusal to pay in support of its claim for punitive damages. Even though the trial court eventually sustained its demurrer to the punitive damages claim, CIG asserts the evidence relating to punitives should never have been presented and, in fact, was highly improper. RJB's witness testified CIG had not paid RJB any gathering fee since 1979. CIG disputes this, claiming to have paid sums pursuant to the FERC's Interim Order. The trial court refused to allow CIG to cross-examine RJB's witness or to allow it to refer to the FERC proceedings. CIG contends the trial court's rulings regarding the gathering fee issue resulted in prejudice to it because the jury returned a verdict for RJB on 100% of the amount of the take-or-pay claims. We disagree. CIG points out no evidence the jury did not return its verdict on the take-or-pay issues solely because of the evidence presented on the aforementioned claims.

■ Next, CIG asserts the trial court improperly allowed RJB to present highly prejudicial evidence of its allegedly dire financial condition. The burden is on the defendant appealing from a judgment on a jury's verdict for the plaintiff, to show the trial court's alleged errors complained of by the defendant were prejudicial to him and that the verdict would probably have been different had such errors not occurred. *Layton v. Purcell,* 267 P.2d 547 (Okla.1954). Other than pointing to the fact the jury returned a verdict in favor of RJB on the take-or-pay claims, it has not shown the verdict probably would have been different had the trial court excluded the aforementioned evidence. Besides, the trial court sustained CIG's demurrer to the evidence concerning RJB's economic coercion theory, and the evidence regarding RJB's alleged financial distress was introduced to support the above-mentioned theory. CIG has not carried its burden of demonstrating prejudicial error.

■ CIG contends the trial court erred in directing a verdict as to liability on the take-or-pay claims because there was evidence sufficient to submit the issue to the jury. It is undisputed CIG made no take-or-pay payments under the contracts. However, it argues that RJB destroyed the ability to calculate take-or-pay deficiencies on an individual well basis. It is further undisputed the production status of the individual wells was unknown because gas from wells under Contracts 535 and 669 which were supposed to flow into a meter known as the sour meter became commingled with the gas flowing from wells under Contracts 669 and 704 flowing into the sweet meter. There is no evidence CIG made an attempt to pay *any* amount or at least to have requested information from RJB which might have assisted CIG in an attempt to make an accurate deficiency payment. Likewise, there is no competent evidence upon which reasonable minds could differ as to whether CIG made any take-or-pay payments under the contracts. *See Moore v. Milner,* 187 Okla. 84, 100 P.2d 999 (1940). Thus, the trial court was correct in directing a verdict for RJB as to liability on the take-or-pay claims.

■ Next, CIG submits the trial court erred in instructing the jury that CIG admitted it owed RJB a minimum amount of take-or-pay payments. CIG's expert testimony revealed a minimum amount of damages under each contract, yet CIG urges that its damages study was performed only for the purpose "of showing that, even assuming that sufficient data was present, RJB's numbers were wrong." It is undisputed CIG had access to RJB's records before the lawsuit was filed and through discovery afterwards. Thus, sufficient data existed to demonstrate CIG owed a minimum amount. This minimum amount was calculated by CIG's damages' expert. The duty of a trial judge to instruct the jury on the fundamental issues of the case means issues as joined by evidence, and not merely as alleged in the pleadings. *Jones v. Redford,* 449 P.2d 890 (Okla.1969). The trial court did not err in instructing the jury CIG owed RJB no less than the amount to which CIG's expert testified.

CIG also contends the trial court erred in excluding its evidence regarding the bal-

ancing of take-or-pay deficiencies and surpluses. It argues that unless well deficiencies were off-set by well surpluses, RJB would be allowed operationally to cause its own take-or-pay problems. Further, because gas from all three contracts was commingled, and RJB kept no records as to what gas from what wells was feeding into the two delivery points, deficiencies and surpluses among the contracts should be balanced in order to arrive at the damages. CIG claims its damages' expert would have testified that "as a result of RJB's operation, certain deficiencies were caused which prudent management would have avoided." The expert also prepared an exhibit balancing the surpluses and deficiencies. In its calculations, prepared by a vice-president of RJB and submitted in response to CIG's interrogatories, RJB did offset well surpluses against deficiencies. At trial, RJB's damages' witness did not rely on the vice-president's calculations, but proceeded to make his own independent study. CIG was allowed to cross-examine RJB's witness concerning the vice-president's calculations and CIG's damages' expert was also permitted to testify concerning the vice-president's calculations. The jury, in fact, did hear evidence regarding the balancing of the take-or-pay deficiencies and surpluses.

■■■ Assuming without deciding, it was error to exclude CIG's expert evidence, it was nothing more than harmless error, not subject to reversal. CIG's expert was allowed to testify concerning RJB's vice-president's calculations, which offset well surpluses against deficiencies. CIG's expert would have testified about his own calculations employing the same surplus/deficiency methodology. *See Woods v. Sand Springs Railroad Company*, 124 Okla. 34, 254 P. 703 (1926).

CIG further argues the trial court erred in striking its defenses of commercial impracticability and frustration of purpose. It contends its performance of the contracts had been rendered impracticable or frustrated by a combination of the radical or unforseeable declines in the market for natural gas and the restructuring of the natural gas industry by lawful orders of the FERC. It submits the trial court should have allowed it an opportunity to present facts supporting its defenses of commercial impracticability and frustration of purpose.

■■■ This argument is without merit. *Golsen v. ONG Western, Inc.*, 756 P.2d 1209 (Okla.1988) provides guidance. In *Golsen* the trial court determined a decline in the demand for gas triggered the Force Majeure Clause in a gas purchase contract. In reversing the trial court, the Supreme Court found that "the fact no market exists for gas at or above ONG's contract price does not establish failure of markets." Absent a specific contract provision creating a cognizable excuse for performance, as a matter of law, the Defendant is not excused because of changes or a decrease in the market demand for natural gas or because of "restructuring of the natural gas industry." In the absence of specific clauses, which expand conditions, which the parties agree will excuse performance, the contracting parties are assumed to have allocated the risk involved in a take-or-pay clause. The trial court did not err in striking CIG's defenses based on commercial impracticability and frustration of purpose.

Next, CIG submits the trial court erred in ruling CIG is not entitled to recoupment.[3] The recoupment or make-up provi-

---

**3.** The provision in the contracts dealing with recoupment is as follows:

4.2 FAILURE OF BUYER TO TAKE CONTRACT QUANTITY—If during any 1–year period, commencing with the 1st day of the month in which initial delivery is made from each well, Buyer shall fail to take the Contract quantity of gas from such well, then Buyer shall pay Seller on or before the 20th day of the 2nd month of the next following year for that quantity of gas

which is equal to the difference between the Contract Quantity and Buyer's actual takes during such period. The amount so paid shall be equal to the price in effect at the time such deficiency occurred, multiplied by the volume of gas for which payment is due Seller, if the date at which such deficiency occurred can be determined; otherwise, the amount so paid shall be equal to the weighted average price for gas delivered hereunder during the period such

sion is an important part of the take-or-pay clause. The purpose of the take-or-pay provision is to allow the pipeline to prepay for volumes of gas it cannot take in a given year and recoup or make-up the payment through deliveries of gas in the future. All of the contracts allow CIG to recoup take-or-pay deficiencies from production in excess of contract quantity in the five years subsequent to a deficiency. The contracts also provide that any unrecouped take-or-pay be refunded to CIG if the seller cannot deliver the gas because the well is not capable of producing or is disconnected under any of the options granted in the contract.

CIG contends that the parties did not intend for CIG to forfeit its recoupment right due to expiration of the contract.

The contracts allow for recoupment "during the 5 years next succeeding a year in which Buyer has failed to take the gas *as paid for.*" Pursuant to the contracts, a buyer has 5 years from the date of payment of the deficiency to recoup its gas.

 In a gas purchase contract, take-or-pay provisions and recoupment provisions are special and are designed to meet the needs of two sophisticated business entities who are deemed to have allocated the risks involved in these types of contracts. As such, these provisions must be strictly construed. Because CIG made no deficiency payments at all, it has no right of recoupment after it has been assessed damages for breach of contract. The trial court did not err in ruling no recoupment was permitted under the contracts.

### III The Counter–Appeal

RJB's claims against CIG for gathering fees and take-or-pay deficiency payments were not based solely on breach of contract theories for relief. RJB also asserted separate tort claims for compensatory and punitive damages, contending CIG had wilfully violated its legal duty to deal fairly and in good faith with RJB by attempting to economically coerce RJB into giving up its right to payment in accordance with the contracts. At trial, the court sustained CIG's demurrer to RJB's evidence in support of its tort claims and prayer for punitive damages.

### A. Tortious breach of Contract

 The issue is whether, in Oklahoma, a claim for tortious breach of contract based on the implied duty of good faith lies, outside the insurance law context. *See Christian v. American Home Assurance Company,* 577 P.2d 899 (Okla.1977). In *Rodgers v. Tecumseh Bank,* 756 P.2d 1223 (Okla.1988), the Oklahoma Supreme Court held the implied duty of good faith and fair dealing, imposed upon contracts of insurance, should not be extended to contracts for commercial loans in order to support an action for tortious breach of contract. The Supreme Court declined to extend such duty because of the inherent differences between insurance policies and commercial loan agreements. RJB makes a persuasive argument in utilizing the "similar characteristics" factors in *Wallis v. Superior Court,* 207 Cal.Rptr. 123, 160 Cal.App.3d 1109 (1984) in order to strike a similarity between characteristics of the instant case and those which would allow a finding of a tortious breach in an insurance contract. However, this Court, also, declines to extend the duty of good faith and fair dealing to take-or-pay gas purchase contracts.

---

deficiency occurred, multiplied by the volume of gas for which payment is due Seller. During the 5 years next succeeding a year in which Buyer has failed to take the gas so paid for, all gas taken by Buyer from Seller which is in excess of the Contract Quantity of gas for the current year shall be known as Make–up Gas and shall be delivered without charge to Buyer until such excess equals the amount of gas previously paid for but not taken, provided that Buyer shall not be permitted to make up any canceled allowable.

However, Buyer will pay Seller any price differential between that price previously paid and that price in effect when such Make–up Gas is actually taken. Seller agrees to refund monies to Buyer for that portion of the gas previously paid for but not taken which Seller is unable to deliver as a result of any such well not being capable of producing such gas or being disconnected under any of the options granted herein.

If this Court were to hold as RJB wishes, then virtually every breach of contract action governed by Oklahoma law would be "fair game" for a punitive damage prayer.[4] The parties' relationship was founded on contracts agreed to at arms length between the parties, both of which are experienced in their fields. Because there was no actionable tort upon which to predicate recovery, the trial court did not err, as a matter of law, in sustaining CIG's demurrer to the evidence.

### B. Economic Coercion

■ RJB also based its tort claims on the doctrine of economic coercion. However, in *Centric Corp. v. Morrison–Knudsen Company,* 731 P.2d 411 (Okla.1986), the Oklahoma Supreme Court declined to determine whether Oklahoma recognized this doctrine as an independent tort. It held only that Oklahoma has long recognized economic duress as a valid basis for avoiding a mutual release and settlement agreement. Because the theory of economic coercion is not an actionable tort upon which to base recovery, the trial court did not err in sustaining CIG's demurrer to the evidence. Thus, regarding RJB's punitive damages claims, this Court affirms the decision of the trial court sustaining CIG's demurrer to the evidence.

### IV PRE–JUDGMENT INTEREST

#### A. The Gathering Fee Judgment

■ Regarding the gathering fee, this Court holds in this opinion that RJB is entitled to recover only the amount prescribed by the FERC for the period prior to March 7, 1983, and 20 cents/Mcf for the period after March 7, 1983. We hold RJB is not entitled to pre-judgment interest for those particular amounts.

Title 23 O.S.1981, § 6 provides:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him on a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

Pursuant to § 6, RJB was not entitled to recover pre-judgment interest because CIG was "prevented by law," by the FERC's orders, from paying the amounts owed. Moreover, on June 5, 1985, CIG tendered the amounts ordered paid by the FERC on April 5, 1985, but RJB rejected the tender. The trial court erred in awarding RJB pre-judgment interest on the gathering fee claim.

#### B. The Take–or–Pay Judgment

■ Neither is RJB entitled to pre-judgment interest on the judgment rendered regarding the take-or-pay claim. Again we refer to 23 O.S. 1981, § 6. It is apparent, the damages were not "capable of being made certain by calculation...." The record reveals the parties disputed both the methodology to be used and the actual calculation of damages. *See Continental Federal Savings & Loan Association v. Delta Corp. of America,* 425 F.Supp. 371 (W.D.Okla.1976). Interest cannot be recovered upon an unliquidated claim where a trial is necessary in order to ascertain the amount due. *Smith v. Owens,* 397 P.2d 673 (Okla.1965). The records were insufficient to permit an accurate determination of the amount of damages from each well. Thus, the trial court erred in awarding RJB pre-judgment interest on the take-or-pay claim.

### V. ATTORNEY FEES

■ CIG asserts the trial court erred in awarding $485,492.00 in attorney fees to RJB. 12 O.S. 1981, § 936 provides:

In any civil action to recover on an open account, a statement of account, accounts stated, note, bill, negotiable instrument, or contract relating to the pur-

---

**4.** *Earlsboro Energies Corporation v. Arkla, Inc.,* No. CIV–87–1372–W (W.D.Okla. Dec. 23, 1987).

chase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

Although regarding the gathering fee, some awards have been modified to reflect the FERC's orders, RJB is the "prevailing party" in this action. RJB is entitled to attorney fees, then, only if the instant action is one for recovery on a "contract relating to the purchase or sale of goods." The contracts in this action are contracts for the sale of natural gas. 12A O.S. 1989 Supp., § 2–107(1) provides:

> A contract for the sale of minerals or the like, including oil and gas, or a structure or its materials to be removed from realty is a contract for the sale of goods within this article if they are to be severed by the seller, but until severance, a purported present sale thereof, which is not effective as a transfer of an interest in land, is effective only as a contract to sell.

Under the terms of the contracts, gas sold to CIG is to be severed by the seller, RJB, who is to gather and condition the gas and deliver it to CIG. Thus, these contracts are "contracts for the sale of goods" within the meaning of § 2–107(1). Because the gas sold under the contracts constitutes "goods" pursuant to § 2–107(1), the contracts are "contracts relating to the purchase or sale of goods" within the meaning of 12 O.S. 1981, § 936. The trial court did not err in allowing RJB to recover attorney fees on the gathering issue.

> The trial court awarded RJB attorney fees on its take-or-pay claim. However, CIG contends that this action is not an action for breach of contract for the sale of goods. RJB was awarded damages for CIG's non-payment of deficiency payments for gas which was not produced. Thus, CIG claims, the gas remains in place and was ot severed as required by 12A O.S. 1981 § 2–107(1) to qualify as a sales contract under 12 O.S. 1981 § 936.

We do not agree. 12A O.S. 1981 § 2–106(1) provides that a contract for sale includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price. 12A O.S. 1981 § 2–401. A "present sale" means a sale which is accomplished by the making of the contract. Thus, the distinction between a "contract to sell" and a "contract for sale" is relevant only in the determination of when title passes from seller to buyer, an issue not before this Court. The action falls within the purview of § 936 as one to recover on contracts relating to the purchase or sale of goods, and as prevailing party on the take-or-pay claim, RJB is entitled to attorney fees.

It is undisputed the trial court did not allocate between services spent on successful and unsuccessful claims, and CIG contends the trial court erred in refusing to allocate between these services. More specifically, the trial court failed to reduce the attorney fees claims for services spent on a withdrawn anticipatory breach claim and the unsuccessful punitive damages claim.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the U.S. Supreme Court held:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult dividing the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discreet claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully-compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success, an enhanced award may be justified. In these circum-

stances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [Citation omitted.] Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

■ Although this Court recognizes that in some instances it is unnecessary to apportion attorney fees between successful and unsuccessful claims, a party nevertheless is not allowed attorney fees on claims unless permitted by statute.[5] RJB's punitive damages claims were tort claims. There is no statute for recovery of attorney fees in tort actions. Thus, the trial court should have apportioned attorney fees to eliminate those fees for the unsuccessful punitive damages claims. *See Sisney v. Smalley*, 690 P.2d 1048 (Okla.1984). Accordingly, we reverse the award of attorney fees to RJB and remand with directions to hold a new hearing on the amount of attorney fees in light of this opinion, based on the views expressed herein, and in accordance with *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659 (Okla.1979).

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

BAILEY, C.J., and REYNOLDS, J., concur.

---

**5.** *Earlsboro Energies Corporation v. Arkla, Inc.*, No. CIV–87–1372–W (W.D.Okla. Dec. 23, 1987).